## EMERY VS. VROMAN.

A guardian's sale of real property of his ward, made in 1850, partly for the future maintenance and education of the ward, and partly to pay debts and charges against the estate, was valid where the proceedings conformed to ch. 65, and not to ch. 64, R. S. 1849.

Where the guardian accounted satisfactorily for "the surplus of the proceeds of the sale," and they went to the benefit of the ward, the sale will not be declared void in a collateral action on the ground that the bond filed for that purpose was not formally approved.

A defect in such a sale in failing to sell the lands in the order of the license, is cured by the confirmation of the sale.

An order of court directing a sale of lands to raise a specified sum, must be construed to mean such sum *in addition to the expenses of the sale.*

A sale of more lands than were necessary to raise the required sum, does not affect the validity of sales made before that sum was raised.

An appointment of a guardian by the district court of the territory of Wisconsin, on an appeal from the appointment of another person, must be regarded as valid under § 46, p. 319, of the Revised Territorial Statutes of 1839, and the constant practice of the territorial courts.

The guardian's bond, under that revision of the statutes, was properly given to "the territory of Wisconsin."

APPEAL from the Circuit Court for *Dane* County.

Ejectment for the undivided half of lots 5 and 10 in block 92 in the city of Madison. The plaintiff proved that Thomas P. Burnett died intestate in 1846, seized of said lots, and read the deposition of Alfred Brunson proving that the plaintiff (now married to one Emery) and her brother, Thomas B., were the sole heirs of Thomas P. Burnett. The witness Brunson also testified that he received letters of guardianship of said Mary and Thomas during their minority; that he made application to the county court of Grant county for license to sell their lands in Madison; that he filed his oath and bond according to law as he understood it; that the bond was approved by the probate judge, but the witness did not know whether the approval was indorsed on the bond; that the sureties in the bond were then and are now responsible; and that the proceeds of the sale were expended by him in paying taxes and supporting his wards.

The defendant claimed title under a sale made by Brunson as the guardian of the plaintiff and her brother, and offered in evidence a record, the material portions of which were as follows : 1. An order of the probate court of Grant county, made April 19th, 1847, directing publication of a notice that the court would, on a day named, hear petitions for the appointment of a guardian for Mary B. and Thomas B. Burnett; and proof of publication of the notice. 2. A petition of J. H. DeStreet and wife to be appointed guardians of said children, and a petition of Alfred Brunson to be appointed their guardian. 3. An order of said probate court, made on the 14th of May, 1847, denying the petition of Brunson, and an order made on the 18th of the same month, appointing one McCartney as guardian, who took the oath of office and filed his bond. 4. An application, filed by Brunson in said court on the 21st of the same month, for an appeal to the district court of Grant county, from the order denying his petition and from the order appointing McCartney. It was stated in the record that the applicant filed his bond with security as required by law, and the court ordered "that the appeal be allowed," &c. 3. An order of the district court of Grant county, which, after reciting the appearance of the petitioner and of the contestant by their respective counsel, declared that the order of the probate court, refusing to appoint Brunson as guardian of said children, and appointing McCartney as guardian, was thereby reversed, closing as follows :  "And it is now further adjudged &c., that letters of guardianship of the said Mary Beck Burnett and Thomas Brunson Burnett   *   *   do issue under the seal of this court, directed to said petitioner Alfred Brunson, who is hereby appointed guardian of said infant heirs.   *   * And it is further ordered that the said Alfred Brunson, before entering on the duties of his appointment as such guardian, do execute and file with the clerk of this court a bond in the penal sum of, &c., conditioned as the law requires, with good and sufficient sureties, to be approved by this court." 6. The

bond given by Brunson in pursuance of said order, which was payable "to the territory of Wisconsin," and filed on the 21st of October, 1847, with an indorsement on it by the judge of the district court, that the sureties were approved. The record of the district court states that on the same day letters of guardianship were duly issued to said Brunson. 7. The petition of Brunson as such guardian, filed in the probate court of Grant county in October, 1850, which stated that his wards were the owners of certain lands, and certain lots in Mineral Point and Madison; that all the personal assets had been administered, except some claims which could not yet be made available; that one year's taxes on said real estate, amounting to nearly $300, had been some time due and unpaid; that the taxes for 1850 would soon be due, amounting to about $300; that there was also due and unpaid the expense of maintenance and education of the wards, amounting to some $200; that a like sum would be required for the current year; and that the incidental expenses of guardianship would probably require $200 more; wherefore he prayed an order to sell so much of the real estate in Mineral Point and Madison as might be necessary, &c. There was annexed to the petition a list of the lands belonging to the wards, and also of the lots in Mineral Point and in Madison. 8. An order of the probate court directing the publication of a notice that the guardian's petition for said order of sale would be heard on a day named, and proof of publication of the notice. 9. The order of sale, which directed that license should issue to the guardian "to sell all and singular the town lots in the town of Madison, in the county of Dane, numbered as follows: lot 12 in block 2; lots 9, 10, 11 in block 25; lots 12, 13, 14 in block 47; lots 1, 2, 17, 18 in block 42; lot 6 in block 66; lot 1 in block 71; lots 3, 4 in block 88; lots 5, 10 in block 92; lot 8 in block 106, &c., [making a list of 62 lots, described in the same order as in the schedule annexed to the petition]; also all and singular the town lots in the town of Mineral Point, numbered as fol-

lows: [Here followed a list of over 80 lots enumerated in the same order as in the list annexed to the petition]; also the following lands: [Here followed a description of certain lands in Grant county]; or so much of the above described real estate as will be sufficient to raise the sum of fifteen hundred dollars. And it is by the judge of said court ordered that when sufficient of said real estate is sold to raise the sum of fifteen hundred dollars, then all further action of said guardian in selling further or more of said real estate shall cease. It is further ordered that said guardian shall commence selling and continue the sales in the order in which such real estate is herein described, until said amount is realized from said sale." 10. The report made by Brunson of his proceedings under said order, in which, after stating that he had duly advertised the sales, and had filed with the judge "the bond and oath required by law," he says that on the *twenty-third* of January, 1851, he sold certain lots in Mineral Point for the aggregate sum of $873.50; and that on the *twenty-ninth* of that month he sold sundry lots in Madison for prices amounting in the aggregate to $1418.05, making the whole amount of sales $2291.55; and that the total expenses of the sales, advertising, &c., were $171.46. The lots in Madison were reported as sold in the following order: "Lots 9, 10, 11 in block 25, for thirty dollars; lots 12, 13 and 14 in block 27, for thirty dollars; lots 1, 2, 17 and 18, in block 42, for twenty-one dollars; lot 6, block 66, two hundred dollars; lot 1, block 61, eighty-three dollars; lot *five*, block 92, to Delaplaine & Burdick, for $255.50; lot *ten*, in same block, to same, for $130.00;" then followed other lots with names of purchasers and prices bid, but lots 12 in block 2, and 3 and 4 in block 88, were not reported as having been sold. 11. The bond of Brunson to account for the proceeds of the sale, which was in the usual form, but was not indorsed with the approval of the probate judge. 12. The oath of Brunson that he would " exert his best endeavors to dispose of the estate in such manner as would be most for the advantage of all

persons interested," which was made on the 21st of January, 1851. 13. The advertisement for the sale of the real estate in Madison, to which was annexed an affidavit of the publisher of the "Wisconsin Express," dated January 30, 1851, stating that the notice, "had been inserted in said paper once in each week for three successive weeks, and that copies of the same had been duly posted in three of the most public places in the town of Madison in Dane county." 14. An order of the probate court of Grant county confirming the sales and directing the guardian to execute conveyances to the purchasers. To the reading of this record the plaintiff's counsel objected for the following reasons: 1st. The appointment of Brunson as guardian, by the district court, was void for the want of jurisdiction in said court to make it. 2d. Said Brunson never gave any such bond as was required, in order to assume the duties of said trust, and the bond given by him for that purpose was of no force. 3d. It appears that said Brunson did not take the oath required by law in case of a guardian selling lands of minors for support, etc., before fixing on the time and place of the sale of the premises in question. 4th. The bond given on such sale was not approved as required by law. 5th. The report of sale in the record shows that Brunson did not sell the premises which he had license to sell, in the order prescribed by the license—omitting to sell lot 12 in block 2, and two other lots in the city of Madison, ordered to be sold before the premises in question in this action. 6th. The guardian had exhausted his powers under his license, having raised the sum authorized to be raised by it before the sale in question was made. 7th. The proof of giving notice of the sale, contained in the record, is not sufficient. 8th. The said proceedings are wholly irregular, insufficient and void, and conferred no authority on Brunson to make the sale in question. The court overruled the objections, and admitted the record in evidence. The defendant then introduced a file of the "Wisconsin Express" showing the publication of the notice of sale of the lots in

Madison once a week for four successive weeks, the first of which publications was on the 2d of January, 1851, and called a witness who testified that he saw the notices of sale posted up in three public places in Madison, and that it was his impression that they were so posted three weeks before the sale. E. Burdick testified that he and Delaplaine purchased the lots in controversy, at said sale, in good faith.   It was admitted by the parties that the guardian had settled his account with the probate judge, since the sale of said lots, and that his account showed what disposition had been made of the proceeds of the sales.   It was also admitted that the present defendant purchased the property in controversy in 'good faith.   The deed made by Brunson as guardian, to Delaplaine & Burdick for the lots in controversy, was admitted in evidence over the plaintiff's objection.   The plaintiff then called a witness and proposed to prove that, at the time of said sale, lot 12 in block 2, and lots 3 and 4 in block 88, in Madison, were worth more than $1500, and that if the lots in Madison, mentioned in the license, had been sold in the order therein mentioned, the said sum would have been raised without a sale of the lots in controversy.   The evidence was objected to, and excluded by the court.   The plaintiff asked the court to instruct the jury as follows:  "1st. The records and deeds given in evidence in this case are not sufficient to show a valid sale of the premises in controversy, and which would divest the title of the plaintiff, if the plaintiff has proved that she was one of the heirs of Burnett, deceased.   2d. If the guardian making the sale in question did not take the oath required by the statute, before fixing the time and place of the sale, then the sale and deed were void.   3d. The omission of the guardian to sell lot 12, in block 2, and lots 3 and 4, in block 88, in Madison, before selling the lots in question, was unauthorized, and he had no right to sell the lots in question until he had sold the others or obtained a different license, and therefore the sale was void. 4th. If the guardian had, before selling the lots in question,

raised by a sale of lots mentioned in the license the sum of $1,500, then he had no authority to sell the lots in question, and the sale of these lots is therefore void. 5th. The records in evidence show that Brunson never was the legal guardian of the plaintiff, and the sale of the lots in question is therefore void. 6th. Unless it is shown that the bond given on the sale of the lots in question was approved by the county judge, and his approval thereof was in writing indorsed on it, the sale was unauthorized and void. 7th. The matters produced and given in evidence by the defendant are not in law sufficient to bar the plaintiff from recovering in this action, if the evidence shows that her ancestor is dead, and that he left only two heirs, and that she is one of those heirs." The court refused to give either of said instructions; and at the request of the defendant, instructed the jury : That if they believed the testimony given by the witness Brunson, and if they found also from the evidence that Brunson gave due notice of the time and place of the sale of the lots in controversy, by posting up notices thereof in three of the most public places in the town in which they were situate, three weeks successively next before the sale, and caused said notice to be published in a newspaper printed in Dane county, for three weeks successively next before the sale, and that the lots in controversy were sold accordingly at public auction to Delaplaine & Burdick, who purchased them in good faith, and that they are now held by the defendant as a purchaser in good faith, they should find for the defendant.

Verdict for the defendant. Motion for new trial overruled, and judgment on the verdict; from which the plaintiff appealed.

*S. U. Pinney*, for appellant :

1. It does not appear that Brunson gave any notice of his appeal to the district court, or that he filed such a bond as the law required, and the appeal was therefore not perfected so as to give the court jurisdiction. 2. If the appeal was perfected, the district court could only exercise its appellate jurisdiction.

It could have affirmed the order of the probate court, or have reversed it with directions as to what order should be entered in the court below; but it could not, by virtue of the appeal, withdraw from the probate court exclusive control of the cause, as it necessarily did by appointing Brunson guardian, and directing letters of guardianship to issue out of the district court, and requiring the bond to be filed with its clerk; and the order of the district court appointing Brunson as guardian was void. Sec. 5, p. 297, Terr. Stat. 1839; *Devin v. Patchen*, 26 N. Y., 441. 3. The bond filed by Brunson in the district court runs to the "Territory of Wisconsin," and the statute, sec. 15, p. 284, 1839, required that it should be given to the infant. Until a valid bond was given by Brunson, McCartney continued to be the guardian. *In re Fisher's Estate*, 15 Wis., 511. 4. Chap. 64, R. S., 1849, applied to cases where it was necessary to sell real estate of the ward for his maintenance and education, and to cases where it was for the benefit of the ward that the real estate be sold and the proceeds invested for him or put out at interest. Chap. 65 applied only to cases where it became necessary to sell the real estate of the ward to pay his debts. The license under which Brunson acted was granted for all these causes, as taxes on land of the wards were, in a general sense, a debt against them. In this case it was absolutely necessary, in order that any title should pass by the guardian's deed, that all the essential provisions of *both* chapters should have been complied with. But this was not done. (1.) The petition for license to sell was radically defective so far as it sought a sale to pay the *debts* of the wards, because it did not set forth the amount of personal estate that had come to the hands of the guardian, nor how much, if any, remained undisposed of, nor the value of the respective portions or lots of the wards, which the guardian asked license to sell. The court had no authority to act on the petition, because it did not state facts necessary to confer jurisdiction. *Grignon v. Astor*, 2 How., 319; Opinion of PAINE, J., 13 Wis., 301–307;

16 N. Y., 185; *Fladland v. Delaplaine,* ante, 459. (2.) It is shown that Brunson did not take the oath required by sec. 14 of chap. 64, *before* fixing on the time and place of sale, as that section required. This omission was fatal to the sale. *Parker v. Nichols,* 7 Pick., 111; *Campbell v. Knight,* 26 Maine, 224; *Cooper v. Sunderland,* 3 Clarke (Iowa), 114; *Reed v. Williams,* 5 Pick., 179; *Knox v. Jenks,* 7 Mass., 488. (3.) The bond to account for proceeds of sale was not approved by the county judge, as required by law. R. S., 1849, chap. 64, sec. 23; chap. 65, sec. 52. Whether it was approved or not can only be determined by the record. 5. The license was not properly executed, in that the lots were not sold in the *order prescribed in the license.* The guardian omitted to sell lot 12 in block 2, and lots 3 and 4 in block 88, in Madison, which were of the value of $1500, and which *preceded* the lots in controversy, in the order of their enumeration in the license. If the guardian had pursued the order of sale prescribed, he would have raised the sum of $1500 before reaching those lots. He who pur-chases an estate sold under a special power must see to it that the power has been properly executed; if not, no estate passes. 7 Mass., 488; 3 Johns. Ch., 344; 1 Hill, 130; 6 Wheat., 119; 13 Wend., 465; 20 id., 241; 1 Comst., 79; 27 Barb., 252. And if the guardian had a right to disregard the order in which the lots were to be sold, the sale of lot 10 in block 92 was in excess of the *amount* he was authorized to raise, and was for that reason void. That the question may be raised at this time under these statutes is established in *Litchfield v. Cudworth,* 15 Pick., 23, and *Wakefield v. Campbell,* 20 Me., 393, decided under the same statute before it was adopted here; *Adams v. Morrison,* 4 N. H., 167. The fact that the sale was confirmed does not change the result. The statute requires (ch. 64, sec. 23; ch. 65, sec. 52) that certain things therein enumerated must be made to appear in order to sustain the sale. If the order of confirmation is conclusive, why is it re-quired to be shown that a bond was given by the administra-

tor, which was approved by the judge, that he took the oath, gave the notice, &c.?

*Stevens & Lewis* and *Spooner & Lamb,* for respondent:

1. The bond filed in the district court was in proper form. Sec. 46, p. 319, Laws of 1839. 2. The bond to account for proceeds of sale appears to have been approved in fact. The sureties are shown to be good, and there has been no breach of the condition. See 14 Ind., 445; 11 Mass., 227. An indorsement by the judge of approval, where required, is only a clerical act, and its omission would not affect the rights of third persons. 3 Texas, 24. 3. The departure from the order in which the lots were directed to be sold was cured by the confirmation of the sale. *Andrews v. Scotton,* 2 Bland, 643; 1st Maryland Ch. Decis., 331; 2 Harris & Gill, 354; 23 Penn. State, 477. 4. The sale of all the lots up to and including those in controversy produced only $1,593 50, and the expenses of sale, &c., were $171 46. The license was to raise $1,500, which means that sum exclusive of the expenses. But if there was an excess, it was cured by the confirmation. 5. A literal compliance with both chapters, 64 and 65, was impossible, the one requiring the guardian to make a deed for the property sold without any report or confirmation, and the other requiring that the sale should be reported and confirmed. The proceeding ought to be sustained, if it conformed to that chapter which was most stringent in its provisions and contained the strongest safeguards of the interest of the wards.

*By the Court,* DIXON, C. J. The sale of the real estate of the ward for his maintenance or education, and the sale of the same property for the payment of his debts, are subjects so nearly identical and so proper to be governed by one course of proceeding, that it is difficult to define the wisdom or utility of two statutes, one for the former and the other for the latter, with such slight changes as are found in chapters 64 and 65 of the Revised Statutes of 1849. The same differences

still exist under the present revision. R. S., 1858, chaps. 93 and 94. Why, for instance, in the latter case but not in the former, the proceedings should be examined by the probate judge, and the sale confirmed if he shall find it to have been fairly conducted and the sum bid not disproportionate to the value, but otherwise rejected ; or why in the former the guardian should be required to take and subscribe the oath before fixing on the time and place of sale, whilst in the latter he may do so at any time before the sale, is not readily perceived upon any ground of reason or justice. Still the law is so written, and where the proceedings are had altogether under one statute or the other, I suppose they must conform to the provisions under which they are taken. In this case, however, they were had partly under both. The sale was in part to maintain and educate the wards, and in part to pay charges against their estate, properly coming under the denomination of debts. In such case, inasmuch as the proceedings cannot be valid in part and in part void, my brethren are of opinion that it is sufficient if they conform to the provisions of the last act, namely, that for the sale of lands for the payment of debts. I must confess that I have some doubt about this, and still I am not prepared to deny its correctness. I agree with them fully that the provisions of the last chapter are much better adapted to guard and protect the interests of the ward ; but I doubt, where there is to be a sale for all purposes, wheth. er the legislature intended that a compliance with these alone should be sufficient. My brethren, however, are clear upon this point, and it becomes unnecessary for me to express an opinion.

Viewing it then as a proceeding under chapter 65, one principal objection, that the oath was not taken before fixing on the time and place of sale, is entirely obviated. The oath prescribed by section 48 was taken and subscribed by the guardian before the sale.

Other objections still remain, but none of them are sufficient, in our judgment, to invalidate the sale.

The bond was filed, but not formally approved. It appears in evidence that the bond then was and still is sufficient. The object of the requirement was to secure the disposition of the proceeds of the sale in the manner prescribed by law. It is not pretended that they have not been faithfully applied and fully accounted for by the guardian. The purchase money having gone to the benefit of the wards, they now sue to recover back the land because the bond was not formally approved. We think they cannot prevail upon any such technical ground. It is at most but a mere informality, not affecting the validity of the sale.

The lands were not sold in the order of the license. This defect, if such it was, was cured by the order of confirmation. The same court from which the order emanated had, in its discretion, the power to modify it, or to dispense with its strict performance in the particular named. This was done by the order of confirmation.

The lands sold were in excess of the sum authorized by the license. Not so with respect to the lots in suit. The license authorized a sale to raise the sum of $1500. Including the lots in suit the bids amounted to but little more than that sum. A fair construction of the order is, that the guardian was authorized to raise that sum exclusive of the expenses of the sale. The expenses amounted to considerably more than the excess at the time these lots were sold.

The appointment of the guardian was void, because the district court of the territory had no power upon appeal to make it. This objection is answered as well by section 46, p. 319 of the revised statutes of the territory, where the jurisdiction of the district court " sitting as a court of probate" is expressly recognized, as by what we understand to have been the constant practice of the territorial courts. Great mischief would ensue, and it is too late to revise and overturn the proceedings

Emery vs. Vroman.

of the territorial courts upon such questions. The same section of the territorial statutes answers the objection that the bond of the guardian as such was not given to the judge of probate in his official capacity. The statute required it to "be given to the territory of Wisconsin."

Judgment affirmed.