[L. A. No. 1841. In Bank.—December 2, 1907.]

L. D. BECHTEL, Respondent, v. L. WIER, Appellant.

EXECUTION SALE, WHEN VOID—DEPARTURE FROM STATUTE OR DECREE—POWER OF COURT TO AUTHORIZE.—A sale under execution or under foreclosure decree is void only if conducted in a manner prohibited by statute, or in a manner which would not have been in the power of the court in the first instance to have authorized. And in this regard it matters not whether the departure was from the statutory mode or from the directions of the decree.

ID.—MORTGAGES BY PRINCIPAL DEBTOR AND BY SURETY—FORECLOSURE DECREE—SALE EN MASSE.—Where the payment of the same promissory note is secured by two mortgages, each covering separate tracts of land, one executed by the principal debtor and the other by his surety, the court has power, in an action to foreclose such mortgages, to direct by its decree that the mortgaged property should be sold *en masse*, in the event that no bid was obtained for either of the parcels when separately offered. If the decree contains no such direction, a sale *en masse*, after the parcels had been separately offered without bids being received, is not void, and, even if voidable, it can only be attacked by direct proceeding within a reasonable time to vacate the sale.

ID.—SALE EN MASSE NOT IRREGULAR.—Where the decree of foreclosure contained no such direction, but merely ordered that the land mortgaged by the principal debtor should be first sold, and if the proceeds thereof were insufficient to satisfy the judgment, then, for any deficiency remaining, the land mortgaged by the surety should be sold, and at the sale no bids were received for either of the parcels when offered separately, a sale of the two parcels *en masse*, in the absence of fraud or injury shown, was not irregular and was a perfectly valid exercise of power; and it is immaterial that the effect of such sale is to impose the whole burden of the debt upon the land of the surety, and to force him, in redeeming, to redeem also the land of the principal debtor.

APPEAL from a judgment of the Superior Court of Los Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

E. W. Freeman, Herbert Cutler Brown, and George H. Moore, for Appellant.

H. L. Dunnigan, and L. D. Bechtel, for Respondent.

HENSHAW, J.—Plaintiff Bechtel and one Lena B. Mattern each gave a mortgage to secure the debt of the latter. The mortgages were on separate pieces of property. Bechtel's mortgage was given as additional security for the Mattern debt. The mortgage declared that it was given "as security for the payment of one promissory note according to its terms," and declared further that if Lena Mattern shall fail to pay or cause to be paid any part of the debt secured when due, the whole debt secured shall, at the option of the mortgagee, or assigns, become due and collectible. A foreclosure was had of these mortgages. The decree and order of sale directed that the parcel of land mortgaged by Lena Mattern be first sold at public auction; that if the moneys arising from the sale of this property were not sufficient to satisfy the judgment, then, for any deficiency remaining, the parcel mortgaged by Bechtel be sold. The sheriff sold the property and issued to the purchaser his certificate of sale in due form. His return shows that he first offered the parcel mortgaged by Mattern for sale and received therefor no bid. He then offered the Bechtel property for sale and received therefor no bid. Thereupon he offered both parcels for sale in one lot and effected a sale for an amount sufficient to satisfy the judgment.

After the sale, which was on April 25, 1901, Bechtel leased his land so sold to the defendant in this action at the monthly rental of twenty dollars. Subsequently, upon defendant's refusal to pay rent, plaintiff brought his action in a justice's court for unlawful detainer. The answer pleaded by way of defense the sale of the land, and alleged that the defendant had paid the rent sued for to the purchaser, a fact uncontradicted. Defendant recovered judgment in the justice's court, plaintiff appealed to the superior court and there recovered judgment, from which this appeal is taken. In the superior court the certificate of sale offered by defendant was excluded upon the ground that the sale itself was void because made contrary to the directions of the decree. Upon the other legal questions involved the attorneys for plaintiff and defendant are in accord. The single proposition to be determined in the case is whether or not the sale was in fact void. If voidable merely, then, owing to the great lapse of time—some five years—and to the fact that this is but a collateral attack and not a direct proceeding to vacate the sale, it could not be overthrown in this action for mere irregularity.

Respondent's position may be thus stated: The terms of
the decree ordering sale are controlling. By those terms the
Mattern property was to be first sold, and the Bechtel prop-
erty was to be sold only in the event of and to make good
any deficiency which might exist after the sale of the Mattern
property; that the right to sell the Bechtel property existed
and arose only after the sale of the Mattern property, and
the sale of the two parcels in gross was a violation of the
terms of the decree, and therefore void.

1. Coming to the consideration of this proposition, it is to
be remembered that a sale under execution or under fore-
closure decree is void only if conducted in a manner prohibited
by statute, or in a manner which would not have been in the
power of the court in the first instance to have authorized.
And in this regard it matters not whether the departure be
from the statutory mode or from the directions of the decree.
Thus it is said by this court in *Humboldt Society* v. *March,*
136 Cal. 321, [68 Pac. 968]: "Whether a motion to vacate
a sale of property made in execution of a judgment, on
account of some irregularity on the part of the officer making
the sale, should be granted, rests very largely in the discre-
tion of the court before which the motion is made; and it is
immaterial whether such irregularity consists in disregarding
the provisions of the statute for making the sale, or in failing
to observe and follow some express direction in the judgment.
A party to an action cannot claim an absolute right to have
such sale vacated, unless he shall show that he has sustained
some injury by reason of the irregularity." And, says Free-
man on Void Judicial Sales (section 21): "It is sometimes
said that a sale under a decree must pursue the direction
therein contained, that a departure from these directions
renders the sale void. But to invoke this rule the departure
must be of a very material character. . . . In truth, the court
is not absolutely bound by the terms of its order or decree
respecting the mode of the sale. . . . If the court had the
power to direct the terms of the sale in the first instance it
may change them afterwards, and if an officer or any other
agent of the law, or of the court in making a sale, departs
from the directions of the decree, the court may, neverthe-
less, by confirming the sale, ratify his action, provided always
that the terms so ratified are such as the court had power to

impose in the first instance." (*Farmers' L. Co.* v. *Oregon P. R. R. Co.*, 28 Or. 44, [40 Pac. 1089]; *Emery* v. *Vroman,* 19 Wis. 689, [88 Am. Dec. 726].)

The question which thus arises is, could the court in its direction for sale have provided for the sale as here actually conducted, *en masse,* to meet the contingency which actually arose,—namely, that no bid was obtained for either of the parcels when separately offered? We entertain no doubt that it could. The powers of a court of equity, dealing with the subject-matters within its jurisdiction, are not cribbed or confined by the rigid rules of law. From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees, that justice may be effectually carried out. It is of the very essence of equity that its powers should be so broad as to be capable of dealing with novel conditions. (*Southern Pacific Co.* v. *Robinson,* 132 Cal. 408, [64 Pac. 572].) The mortgage contract of the surety in this instance was the agreement that his property should be subject to the payment of the whole debt due from Mattern. His principal right was that the Mattern property should first be exhausted toward the payment of that debt before recourse was had against his property. But his obligation was none the less the payment of the whole debt. If, for any reason, the security of the principal debtor had failed utterly, no doubt can be entertained but that all of Bechtel's property could have been subjected to sale for the payment of all of the Mattern debt. No doubt therefore can be entertained but that it would have been within the power of the court to order such a sale as was here made, if it had anticipated a failure to derive any money from the sale of the Mattern property, if, in other words, it had become valueless as security, or if, as here, after fully preserving the rights of the surety by ordering first a sale of the principal debtor's property, the court had further decreed that in case of failure to effectuate the sale, both pieces of property might be offered and sold in gross. And in the absence of fraud or unfair advantage taken (and it is to be noted that there is no attack upon the sale for any such reason), it would be assumed, from the fact that the sheriff was unable to sell the parcels of land separately and could only sell them as a whole, that the lands were more valuable taken together than sep-

arately. (*Hibernia S. & L. Society* v. *Behnke,* 121 Cal. 339, [53 Pac. 812].) Thus we find that it has been consistently held in this state since *Nagle* v. *Macy,* 9 Cal. 426, that a sale irregularly made is not void, but voidable merely, and is good until regularly set aside. The title of a purchaser at such sale cannot be impeached in a collateral action for any such irregularity. Moreover, it is held that a sale *en masse,* instead of by separate parcels, even if not authorized, establishes only an irregularity and not a lack of power, and is not void. Thus in *Vigoureux* v. *Murphy,* 54 Cal. 346, it is said: "There is no doubt that a sale *en masse* under a writ of execution, of several known and distinct parcels, at a price greatly below the actual value of the property, cannot be sustained against the objection of the judgment debtor. Such sales are not void, but are voidable, and will be set aside upon a proper application of the judgment debtor, when made in a reasonable time after such sale, where there is no ground in reason for belief that it was less beneficial to the judgment creditor or debtor than it would have been had the sale been made of the separate parcels." (Citing *San Francisco* v. *Pixley,* 21 Cal. 57; *Page* v. *Randall,* 6 Cal. 32.) And in *Hudepohl* v. *Liberty Hill etc. Co.,* 94 Cal. 588, [28 Am. St. Rep. 149, 29 Pac. 1025], an appeal from a proceeding instituted to set aside an execution sale of several distinct lots of land because they were sold in gross, this court said: "It is not sufficient to allege merely that several separate tracts were sold in a lump by the sheriff. (*Riddell* v. *Harrell,* 71 Cal. 262, [12 Pac. 67].) Such cases are voidable, not void; and one who seeks to have a sale *en masse* set aside should show that none of the conditions which would authorize the sale of all the parcels together existed at the time of the sale." And Freeman on Executions (sec. 1711) says: "The decided preponderance of the authorities on this subject shows that a third person cannot object to a sale *en masse;* and that, when the person entitled to complain does not do so by some appropriate proceedings, the sale is impregnable to any collateral assault, and must be treated as valid."

2. We have so far considered the question of the sale to the extent of determining that, at the worst, it was not void, but voidable merely, and that respondent's remedy was by direct proceedings within a seasonable time to vacate the sale,

proceedings which were never taken. But equally demonstrable is the proposition that, in the absence of fraud and injury shown, the sale *en masse* of the two parcels of land, under the circumstances indicated by the sheriff's return, was not even irregular, but was a perfectly valid exercise of power. *Marston* v. *White,* 91 Cal. 40, [27 Pac. 588], quotes Freeman on Executions to the following effect: "The rule applicable to such cases is stated, and we think correctly, in Freeman on Executions (sec. 296) as follows: 'The rule that distinct parcels should be separately sold is not generally enforced to the extent of denying the right to sell when the sale can be made in no other way. Hence the officer, after offering the parcels separately and in various combinations, without receiving any bids, may then offer and sell them *en masse*; . . . Here the lots were offered separately, as directed by the appellant, and the only ground urged for setting aside the sale was, that they were sold together. This, as we have seen, was not a valid ground, . . ." So, also, in *Connick* v. *Hill,* 127 Cal. 164, [59 Pac. 832], it is said: "It is now the settled rule in this state that whenever separate known parcels of land are offered for sale separately in foreclosure proceedings, and no offer or bid made for either parcel, then the property may be offered and sold in one parcel. (*Marston* v. *White,* 91 Cal. 40, [27 Pac. 588]; *Hibernia S. & L. Society* v. *Behnke,* 121 Cal. 341, [53 Pac. 812].) The same rule is laid down by the supreme court of the United States. (*White* v. *Crow,* 110 U. S. 190, [4 Sup. Ct. 71].) The rule is to consider every sale made by an officer of court under the mandate thereof as final. (*Hopkins* v. *Wiard,* 72 Cal. 262, [13 Pac. 687].)" See, also, *Anglo-California Bank* v. *Cerf,* 142 Cal. 304, [75 Pac. 902].)

Nor can it matter, as argued by respondent, that the effect of such sale is to impose the whole burden of the debt upon his land, and at the same time to force him in redeeming to redeem also the land of the principal debtor. By his contract he imposed the burden of the whole debt upon his land, if, for any reason, the security of the principal debtor should fail. He is entitled to be subrogated to all the rights and remedies of the judgment creditor, and this is all he may justly ask. (Civ. Code, sec. 2848; Code Civ. Proc., sec. 709.) Respondent's contention that the direction was for a sale of

the principal debtor's property before recourse could be had to the property of the surety, and that nothing can fill the measure of this requirement but an actual sale—presents altogether too narrow a view of the matter, and one not agreeable to equity. In this view, if an actual sale of the property of the principal debtor is a prerequisite to the subjection of the surety's property to the payment of the debt, it would amount to a confiscation of the creditor's security to the extent of his lien against the surety's property, in case an actual sale of the property of the principal debtor could not be effected. The reasonable and equitable view of the matter we take to be that adopted and expounded by the supreme court of Iowa. According to the statutes of that state concerning the homestead of the judgment debtor, it is provided that such homestead should not be sold except to supply the deficiency remaining after exhausting other property of the debtor also liable to execution. In *Burmeister* v. *Dewey,* 27 Iowa, 468, there had been a foreclosure upon real property, including the homestead of the judgment debtor. At the execution sale the property was offered in two parcels so as to exclude the homestead, and no bid was received therefor. Thereupon it was offered in gross, including the homestead, and sold. It was there argued, as here, that the law required a sale of the other property, and permitted a sale of the homestead only to supply a deficiency. The court said: ''But was the other property named in the writ exhausted?. I say it was when it was all offered in the smallest legal subdivisions, and not sold for want of bidders. If, after being thus offered, the other two hundred acres had been offered in a body and not sold, and the two hundred and forty had been offered and sold, it would, to my mind, be the merest talk to say that the other property was not exhausted, and, therefore, the homestead could not be sold; that an offer of the other property, without selling it, is not exhausting it within the meaning of the law. The power to sell, the duty to sell, would, in my judgment, beyond doubt arise after the offer of the two hundred in gross, whether sold or not. If this is not so, then the sheriff might be required to perform, in some instances, an impossibility before the homestead could be sold.''

With this view we are in full accord, and upon both of the grounds above mentioned the judgment must be reversed and the cause remanded.

Angellotti, J., Lorigan, J., and McFarland, J., concurred.

SHAW, J., concurring.—I concur in the judgment upon the grounds stated in part one of the foregoing opinion. As to the second ground, it appears that the appellant was a surety only, and the provision of the decree requiring a separate sale was for his benefit. I am not prepared to say that he should not have the irregular sale set aside in a direct proceeding for that purpose.

Beatty, C. J., dissented.

Rehearing denied.