LIU, J.,
Concurring. — “From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees, that justice may be effectually carried out.” (Bechtel v. Wier (1907) 152 Cal. 443, 446 [93 P. 75].) Carrying out justice in this fee dispute is perhaps easier said than done, since no party appears blameless here. Today’s opinion foregrounds Squire Sanders (US) LLP’s behavior, casting the law firm as the undeserving recipient of millions of dollars in unreasonable legal fees and thus an appropriate target for Hartford’s unjust enrichment action. But there are other parts to the story. Hartford spent years attempting to avoid its duty to defend, and as Squire Sanders was racking up the disputed fees, J.R. Marketing, L.L.C., was not exactly a helpless bystander.
Hartford issued J.R. Marketing a general commercial liability policy in the summer of 2005. Pursuant to the policy, Hartford promised to defend and indemnify J.R. Marketing against claims for various business-related damages. In September 2005, J.R. Marketing found itself a defendant in a third party lawsuit in Marin County. Hartford refused to defend J.R. Marketing on the ground that the claims at issue were not covered by the policy.
Thus began what the Court of Appeal later described as “Hartford’s ongoing failure to immediately and fully defend.” In February 2006, J.R. Marketing — now represented by Squire Sanders — brought a coverage action against Hartford. In March 2006, Hartford agreed to defend J.R. Marketing subject to a reservation of rights but refused to pay any defense costs incurred prior to January 19, 2006. In addition, Hartford insisted on using its usual panel counsel rather than providing independent Cumis counsel. (See San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc. (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494] (Cumis).) Unimpressed with this offer, J.R. Marketing moved for summary adjudication of the coverage action. The trial court agreed, concluding in July 2006 that “Hartford owed a duty to defend that arose on September 26, 2005” — the date J.R. Marketing tendered defense to Hartford — and that Hartford’s reservation of rights “triggered the need for independent counsel.”
*1009 Hartford then failed to comply with the trial court’s July 2006 summary adjudication order, prompting J.R. Marketing to move for enforcement. In response, Hartford moved to disqualify Squire Sanders, arguing that because the law firm was simultaneously serving as Cumis counsel to another Hartford policyholder in a separate third party lawsuit, it could not represent J.R. Marketing in its coverage action against Hartford.
On September 27, 2006, the trial court denied Hartford’s disqualification motion, explaining that Squire Sanders’s role as Cumis counsel in the separate third party lawsuit did not give rise to an attorney-client relationship between Squire Sanders and Hartford. On the same day, the trial court issued an enforcement order finding that Hartford “has breached and continues to breach its defense obligations by (1) failing to pay all reasonable and necessary defense costs incurred by the insured and by (2) failing to provide Cumis counsel.” Hartford “had paid some defense bills but not others, and had unilaterally deducted certain portions of the costs contained in still others.” The trial court ordered Hartford to pay Squire Sanders’s outstanding invoices within 15 days and pay future invoices within 30 days.
Although the trial court recognized that Squire Sanders’s fees had to be reasonable, it also explained that by breaching its duty to defend, Hartford had forfeited the protections afforded to insurers by Civil Code section 2860 (hereafter section 2860), including the statutory limitation on Cumis counsel’s rates. As the trial court explained, affording Harford the benefit of section 2860 “would work an injustice, since Hartford has already forced its policyholders to transfer the defense of the [Marin County] matter from [Squire Sanders] to Hartford’s panel counsel, only to have it come back again.”
Hartford appealed the trial court’s summary adjudication order, enforcement order, and denial of its motion to disqualify Squire Sanders. The Court of Appeal affirmed in a pair of unpublished opinions filed in October and November 2007. Only then — more than two years after J.R. Marketing tendered defense of the Marin County action to Hartford — did Hartford finally accept that it had to pay Squire Sanders for its work on the matter.
Meanwhile, in defending the Marin County action, Squire Sanders incurred the legal fees now at issue in this case. J.R. Marketing lacked extensive litigation experience, but it nonetheless played a role in its own defense. As the Court of Appeal observed, J.R. Marketing’s officers “hired Squire as independent counsel to represent their interests in the defense, negotiated the relevant fee arrangement with Squire, and oversaw all matters of defense strategy including, presumably, deciding with Squire the cost/benefit of various litigation pursuits.” The Court of Appeal further noted that according to Hartford’s own complaint, J.R. Marketing’s officers and other individual *1010 defendants in the Marin County action “authorized and ratified each act of legal service rendered by Squire on their behalf as counsel in those actions.”
This narrative shows that the relationship among Hartford, J.R. Marketing, and Squire Sanders was fraught in a way that fundamentally differs from the usual Cumis scenario in which an insurer agrees to defend its insured subject to a reservation of rights. By breaching its duty to defend, Hartford forfeited its right under section 2860 to retain oversight of Squire Sanders’s defense of the Marin County action. Further, J.R. Marketing allegedly “authorized and ratified” Squire Sanders’s work. Given this background, it is not surprising that Squire Sanders’s fees led to a further dispute with Hartford, but it is not clear who, as between J.R. Marketing and Squire Sanders, should be directly accountable to Hartford for any alleged overbilling.
Today’s opinion grounds its analysis in the September 2006 enforcement order, which said that despite Hartford’s recalcitrance, Squire Sanders’s bills “still [had to] be reasonable and necessary.” The order further provided that “[t]o the extent Hartford seeks to challenge fees and costs as unreasonable or unnecessary, it may do so by way of reimbursement after resolution of the [Marin County action].” The court correctly reasons that because this order establishes Hartford’s right to seek reimbursement from someone, and because Hartford alleges that the fees at issue were not incurred for the benefit of J.R. Marketing, it follows that Hartford should be able to recover directly from Squire Sanders, “who are the unjust beneficiaries of the insurer’s overpayments.” (Maj. opn., ante, at p. 999.)
Crucially, though, the court leaves open the possibility that some portion of Squire Sanders’s allegedly unreasonable fees were incurred for the benefit of J.R. Marketing. To the extent this is true of any of the fees Hartford seeks to recover, such fees necessarily fall outside the scope of today’s holding. For that holding is premised on the dual assumptions “that Squire Sanders’s bills were objectively unreasonable and unnecessary to the insured’s defense in the underlying litigation and that they were not incurred for the benefit of the insured.” (Maj. opn., ante, at p. 999.) On remand, it will be Hartford’s burden to show not only that the fees it seeks to recover from Squire Sanders were not “objectively reasonable at the time they were incurred, under the circumstances then known to counsel” (id. at p. 1006), but also that the fees were not incurred for J.R. Marketing’s benefit. If Squire Sanders’s fees were unreasonable but incurred primarily for J.R. Marketing’s benefit, Hartford’s reimbursement action should lie against J.R. Marketing, not Squire Sanders. (See Buss v. Superior Court (1997) 16 Cal.4th 35, 51 [65 Cal.Rptr.2d 366, 939 P.2d 766] [when Cumis counsel’s representation includes defense of claims not even potentially covered by the policy, the insured “benefits from ‘unjust enrichment’ ” and may be sued by the insurer].)
*1011 Today’s narrow decision does not address how the trial court should determine which entity benefited from the allegedly unreasonable fees. That question will have to be decided on remand. In the circumstances here, I believe Hartford should have to overcome a presumption that any fees billed by Squire Sanders — even fees later found to be unreasonable — were incurred primarily for the benefit of J.R. Marketing. Such an approach would accord with the purposes behind the Cumis scheme as well as our usual understanding of the attorney-client relationship.
We have long recognized that “ ‘[t]he Cumis doctrine requires “complete independence of counsel” [citation], who represents “solely the insured” ....’” (Musser v. Provencher (2002) 28 Cal.4th 274, 283 [121 Cal.Rptr.2d 373, 48 P.3d 408].) In other words, “Cumis counsel represents the insured independently of the insurer,” and its attorney-client relationship exists with the insured, not the insurer. (Assurance Co. of America v. Haven (1995) 32 Cal.App.4th 78, 90 [38 Cal.Rptr.2d 25], some italics omitted.) Thus, when it comes to defending the third party action, the insured retains ultimate decisionmaking authority. (See id. at p. 87 [“An important corollary of the Cumis doctrine is that if the insured is entitled to Cumis counsel, the insured is entitled to control the defense of the case.”]; Cumis, supra, 162 Cal.App.3d at p. 369.)
More generally, we understand the client’s right of control in terms of agency. The attorney acts as the agent of his or her client, and “the client as principal is bound by the attorney’s acts within the scope of the attorney’s actual (express or implied) or apparent or ostensible authority, or by unauthorized acts ratified by the client.” (1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 235, p. 309; see Link v. Wabash Railroad Co. (1962) 370 U.S. 626, 633-634 [8 L.Ed.2d 734, 82 S.Ct. 1386].) This is so even though some insureds are “not sophisticated, frequent litigators accustomed to monitoring their counsel’s day-to-day litigation decisions.” (Maj. opn., ante, at p. 1005.) The general rule, in both civil and criminal matters, is that an attorney is the client’s agent and the client is responsible for the attorney’s actions, regardless of the client’s sophistication. I see no reason to make an exception here. (Cf. Link, at p. 634, fn. 10 [“[I]f an attorney’s conduct falls substantially below what is reasonable under the circumstances, the client’s remedy is against the attorney in a suit for malpractice.”].)
In concluding that Hartford may seek reimbursement directly from Squire Sanders, the court sees no threat to Cumis counsel’s independence that differs appreciably from what section 2860 contemplates. “Given that section 2860 comes into play only when there exists a real and significant disjuncture between the interests of an insurer and its insured,” the court says, “we fail to see how the degree of tension in the relationship between Hartford and the *1012 insureds in this case — even if purportedly higher than in cases where section 2860 is triggered — meaningfully heightens any threat to Cumis counsel’s independence.” (Maj. opn., ante, at p. 1004; see id. at p. 1003 [rejecting Squire Sanders’s contention that § 2860 envisions a “ ‘more collaborative’ ” relationship among insurer, insured, and Cumis counsel].) But the court understates the degree to which this case differs from the typical Cumis scenario.
In the ordinary situation that requires appointment of Cumis counsel, the insurer acknowledges that some or all of the third party claims are at least potentially covered under the policy and on that basis agrees to defend its insured. If the “insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist” that gives rise to the need for Cumis counsel. (§ 2860, subd. (b).) But the existence of that conflict does not mean the insurer and insured are entirely at odds. Their interests remain aligned as to third party claims unaffected by the coverage dispute. And even as to the claims implicating that dispute, “[b]oth the insured and the insurer, of course, share a-common interest in defeating the claims.” (Long v. Century Indemnity Co. (2008) 163 Cal.App.4th 1460, 1471 [78 Cal.Rptr.3d 483].) The conflict exists only to the extent that “if liability is found, their interests diverge in establishing the basis for that liability.” (Ibid.)
Having accepted that this conflict of interest requires appointment of Cumis counsel, the insurer then plays an integral role in establishing and managing the tripartite relationship. At the appointment stage, it may “exercise its right to require that the counsel selected by the insured possess certain minimum qualifications.” (§ 2860, subd. (c).) Once Cumis counsel begins representing the insured, “it shall be the duty of [Cumis] counsel and the insured to disclose to the insurer all information concerning the [third party] action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action.” (§ 2860, subd. (d).) In addition, “both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation,” and “[c]ounsel shall cooperate fully in the exchange of information that is consistent with each counsel’s ethical and legal obligation to the insured.” (§ 2860, subd. (f).) This statutory scheme, like its counterparts in other jurisdictions, contemplates that “an insurer can reasonably insist that independent counsel fully inform it of factual and legal developments related to the defense, consult with it on defense strategy and tactics, and consult with it before incurring major expenses in the course of the defense.” (Richmond, Independent Counsel in Insurance (2011) 48 San Diego L.Rev. 857, 890, fns. omitted.) Indeed, “[t]he insurer’s advice, insight, or suggestions may prove valuable to the insured.” (Ibid.)
*1013 These statutory mechanisms promote transparency and collaboration among the insurer, insured, and Cumis counsel. Because the insurer is in the dark only as to matters pertaining to the coverage dispute, section 2860 narrows the fee issues about which these entities might disagree. The avenues of participation and information sharing built into the usual Cumis scenario reduce the risk that a fee dispute will serve as a mechanism by which the insurer seeks to influence the judgments of Cumis counsel.
Here, unlike the usual Cumis scenario, Hartford breached its duty to defend J.R. Marketing. After the trial court found Hartford in breach, Hartford refused to provide J.R. Marketing with independent counsel retained at the insurer’s expense. And after the trial court found that J.R. Marketing was entitled to independent counsel, Hartford did not timely pay Squire Sanders’s invoices until the trial court issued its September 2006 enforcement order. By the terms of the enforcement order, Hartford lost its statutory protections, including the insurer’s usual oversight role over matters outside the scope of the coverage dispute. (§ 2860, subds. (d), (f).) Once Hartford was shut out of Squire Sanders’s defense of the Marin County action, it is little wonder that Hartford, which fought to prevent counsel’s appointment in the first place, has alleged flaws in the way Squire Sanders conducted the defense. When an insurer breaches its duty to defend, seeks to prevent appointment of Cumis counsel, refuses to timely pay counsel until ordered to do so, and forfeits its statutory right to participate in the defense, I think it is evident that the availability of a reimbursement action directly against counsel “meaningfully heightens [the] threat to Cumis counsel’s independence” (maj. opn., ante, at p. 1004) beyond what occurs in the usual Cumis scenario.
In recognition of Cumis counsel’s independence and the well-established agency relationship between client and attorney, the trial court on remand should apply a presumption that Squire Sanders’s fees were incurred primarily for the insured’s benefit. Without such a presumption in this kind of case, where the insurer and insured are bitterly divided and the insurer has forfeited its statutory oversight authority, counsel will face a conflict between its duty of loyalty to the insured and its understandable desire to avoid liability in a subsequent reimbursement action by the insurer. An insurer seeking reimbursement from Cumis counsel for unreasonable fees should have to demonstrate that counsel misled the insured in the representation, acted without the insured’s express or implied authorization, contravened the insured’s instructions, or otherwise acted in a manner with little or no benefit to the insured.
It may be difficult to determine whether or how much the insured benefited simply by looking at the services provided. Assigning two associates to write the same research memo might be duplicative, but what if the work was *1014 meant to ensure that no stone goes unturned in researching a difficult area of the law? Taking seven depositions instead of three might result in significant fees, but if counsel seeks to probe all angles that might help its client, can it be said, without careful inquiry, that the fifth (or sixth or seventh) deposition yielded little or no benefit to the insured? Such practices may, upon inspection, turn out to be unjustifiable bill-padding by counsel. But absent evidence to the contrary, we should presume that the insured, as the client controlling Cumis counsel’s defense of the third party action, was the entity that primarily benefited from any fees incurred.
To be clear, Squire Sanders is probably not blameless in this matter. When its invoices are carefully scrutinized on remand, it may have to reimburse Hartford for some or all of the disputed fees. But in our effort to achieve an equitable result, we should give due consideration to the integrity of the attorney-client relationship. The history of this contentious case should cause us to be alert to basic norms of attorney loyalty and independence as well as client control and accountability.