[Civ. No. 10459. Third Dist. June 27, 1963.]

CLAUDIA WALKER, Plaintiff and Appellant, v. VIOLET KONITZER et al., Defendants and Respondents.

Claudia Walker, in pro. per., for Plaintiff and Appellant.

Rodegerdts, Means & Northup and Oliver J. Northup, Jr., for Defendants and Respondents.

SCHOTTKY, J.—Plaintiff appeals from a judgment by the Yolo County Superior Court holding that the appellant had no claim against the respondents for costs appellant incurred for disinterment of Jeanette Bush in Washington and reburial in California and that the respondents were not liable to appellant for the value of the Jeanette Bush estate.

On the date of the oral argument before this court appellant filed a motion to augment the record on appeal by receiving as part of the exhibit the so-called Starlund record which was submitted by appellant to the trial court following the hearing of appellant's motion for a new trial. The minutes of the trial court dated May 26, 1961, state:

"In the above entitled matter, plaintiff's Motion for New Trial having been submitted after hearing on May 5, 1961, and plaintiff having been allowed until May 24, 1961 to present certain documents to the Court for consideration and interpretation; and the Court having received certain documents, and having considered all the evidence and arguments submitted by counsel on behalf of defendants and by plaintiff, now orders that plaintiff's Motion for New Trial be denied."

In view of the fact that the court received the so-called Starlund record, we have concluded that appellant's motion to augment should be granted and have considered said documents as part of the record on appeal.

Before discussing the contentions of the appellant, we shall give a brief summary of the evidence as shown by the record which is before us on a settled statement. Respondents,

Violet and Gaither Konitzer, are brother and sister. The respondents' mother, Rosa Lee Konitzer, and Jeanette Bush, deceased, were sisters and were the daughters of David Russell. David Russell and his wife had, in addition, another daughter who was the mother of appellant. David Russell died in 1930 and was buried in a family plot which he owned and founded in Dixon, California. At the time of Jeanette Bush's death the plot contained several unused sections.

Violet Konitzer met Jeanette Bush only once at the services for David Russell. Thereafter, they exchanged occasional letters. The appellant never met Jeanette Bush, although she corresponded with her, starting in 1949.

Jeanette Bush died in September 1955 in Seattle, Washington, where she was a resident. She had received public assistance from the State of Washington for several years prior to her death because she was ostensibly without funds. Violet Konitzer was notified of the death of Jeanette Bush by the King County Hospital in Seattle. By telegram she advised the hospital she could not assume responsibility for the affairs of the deceased and instructed the hospital to search for Jeanette Bush's safe-deposit box and insurance policy. She did not notify appellant of the death because she did not know appellant's address. Respondent Violet Konitzer was informed by a Mrs. Mossback that Washington law provided for the burial of Jeanette Bush. Appellant did not learn of the death of Jeanette Bush until the following February. In the meantime, she had been buried at public expense at Abbey View Cemetery in Washington.

In November 1955 Violet Konitzer was paid $500 as sole beneficiary of a life insurance policy owned by Jeanette Bush. Violet had been contacted by the Ladies Auxiliary to the Brotherhood of Railroad Trainmen, the issuer of the policy, and received payment thereon.

In February, upon learning of the death of Jeanette Bush, appellant went to Seattle. Appellant discovered a safe-deposit box registered to Jeanette Bush which contained her will naming Violet as executrix and both respondents as sole beneficiaries. The will provided burial costs were to be paid by the estate, but no specific burial instructions were given. The box also contained a savings passbook showing a balance of $1,870. Neither appellant nor respondents knew of the will or the $1,870 balance prior to the opening

of the box, although in October 1955 Violet received from Mrs. Mossback a receipt for rental of the box. Violet had written to the bank about the box, but she was not successful in having it opened. The will was filed for probate more than five months after the death of Jeanette Bush. An administrator with the will annexed was appointed. The State of Washington filed a claim against the decedent's estate based on old-age benefits illegally obtained by concealment of assets. The claim substantially exceeded the value of the estate.

Shortly after learning of the death of Jeanette Bush appellant began to seek means of obtaining the disinterment and reburial of decedent in the Russell family plot in California. Appellant requested the assistance of respondents, and she notified them that they would be held responsible for part of the cost. Respondents opposed such action, as did the State of Washington and the administrator of the estate.

In January 1957 appellant's efforts resulted in a court order allowing disinterment and reburial. By agreement with the State of Washington the appellant was to be paid approximately one-half of the remaining estate of the decedent after payment of the expenses of administration, which appellant was to be permitted to apply toward the cost of reburial. It is apparent that the State of Washington entered the agreement voluntarily as appellant had no enforceable claim to the money.

Appellant requested respondent Violet to turn over to her the $500 she had received from the insurance policy so appellant could apply it on the cost of the reburial. Appellant claimed that Jeanette Bush intended that the proceeds of the insurance policy should be used to pay the costs of burial in the family plot, but the trial court found that Violet was named beneficiary of the policy "free from any condition, restriction or trust; . . ." Respondents refused to pay any part of the costs of reburial or to turn over any money to appellant.

Appellant thereafter commenced this action to recover the $500 insurance money, to recover treble damages for costs incurred in reburying Jeanette Bush, and to recover the value of her estate from respondents.

Appellant contends that because Violet failed to bury Jeanette Bush in the family plot as required by section 8651 of the Health and Safety Code she is entitled to re-

cover the cost to her of disinterment and reburial, along with treble damages, by reason of section 7103 of the Health and Safety Code.

 Section 8651 provides:

"*Rights of user in family plot.* In a family plot one grave, niche or crypt may be used for the owner's interment; one for the owner's surviving spouse, if any, who by law has a vested right of interment in it; and in those remaining, if any, the parents and children of the deceased owner in order of death may be interred without the consent of any person claiming any interest in the plot."

 Section 7103 provides:

"*Omission to inter a misdemeanor: Civil liability.* Every person, upon whom the duty of interment is imposed by law, who omits to perform that duty within a reasonable time is guilty of a misdemeanor. In addition, he is liable to pay to the person performing the duty in his stead treble the expenses incurred by the latter in making the interment, to be recovered in a civil action."

 It is apparent from a reading of section 8651 that appellant has misconstrued its meaning. The section only gave to Jeanette Bush, the daughter of the owner of the plot, the right to be buried in the plot regardless of any opposition from others claiming an interest in the plot. The section is entirely permissive in giving the deceased this right. Since Jeanette Bush made no request to be buried in the plot, section 8651 of the Health and Safety Code placed no duty on either appellant or respondents to bury her there. Furthermore, no promise was made by the respondents to bury her in the plot.

 Appellant argues further that she has superior right over the respondents to require burial in the plot on the theory that since her adopted mother is deceased she is elevated to the relationship which her mother bore to David Russell, thus elevating her one degree over the respondents in kinship. Appellant has cited no decisions which support this contention, and we are convinced that it is not supported by either reason or authority.

 Appellant also contends that she is entitled to recover under section 7103, *supra,* because of the following provision in section 7100 of the Health and Safety Code:

"*Devolution of right and duty: Liability.*

"*Persons enumerated.* The right to control the disposition

of the remains of a deceased person, unless other directions have been given by the decedent, vests in, and the duty of interment and the liability for the reasonable cost of interment of such remains devolves upon the following in the order named:

"(a) The surviving spouse.

"(b) The surviving child or children of the decedent.. ... ;

"(c) The surviving parent or parents of the decedent. : ...

"(d) The person or persons respectively in the next degrees of kindred in the order named by the laws of California as entitled to succeed to the estate of the decedent."

We believe this contention is without merit. The facts are undisputed that the decedent died in the State of Washington, a resident of the State of Washington, that her burial was at public expense in the State of Washington, and that neither the state nor any agency thereof has subsequently made any claim against any of the parties for the expenses of the original burial. The California statutes upon which appellant relies relate to burial in the first instance. Section 7101 of the Health and Safety Code provides that the cost of interment shall be a charge against the estate of the decedent. With regard to the obligation to pay the cost of burial imposed upon kindred of the decedent by the provisions of section 7100 of the Health and Safety Code, the appellate department of the Superior Court of San Diego County has recently stated: "It is well established that the estate of the deceased is *primarily* liable for funeral expenses and the liability provided for in section 7100 is a *secondary* liability." (Italics ours.) (*Benbough Mortuary* v. *Barney*, 196 Cal.App.2d Supp. 861, 863 [16 Cal.Rptr. 811].)

We are not aware of any authority on the subject of whose duty it is to bear the cost of disinterment and reburial. This is probably because disinterment and reburial are not a matter of duty but of privilege. If the will of a deceased person contained instructions for burial in a certain cemetery plot and there were sufficient funds in the estate to defray the expense thereof, disinterment and reinterment could properly be ordered. But where, as in the case at bench, the decedent left no burial instructions in her will and was first interred in the State of Washington where she resided, appellant was not entitled to recover any part of the cost of said reinterment from respondents. Appellant was, no doubt, actuated by a commendable desire to have the remains of Jeanette Bush reinterred

in the family plot at Dixon, but this would not give her the legal right to compel respondents to pay part of the cost thereof. Appellant received under her agreement with the State of Washington the sum of $563.67 from the estate of Jeanette Bush. The actual reburial costs were $477.78, although appellant testified that she expended the sum of $1,008.83 in securing the order for disinterment and reburial. The trial court found that appellant "received out of the estate of JEANETTE AUGUSTA BUSH moneys in excess of the actual cost of said removal and reburial."

Appellant contends further that the $500 which respondent Violet received from the insurance policy was subject to the cost of reburial and that therefore it must be turned over to her. This contention cannot be sustained because as found by the trial court and sustained by the evidence Violet was named as sole beneficiary without any condition or restriction. Furthermore, Jeanette Bush's will provided that the burial costs were to be paid from her estate.

Likewise without merit is appellant's final contention that she is entitled to recover from respondents the value of the estate of Jeanette Bush. Her theory is that respondents breached their duty to file the will for probate within 40 days after the death of Jeanette Bush, causing appellant damages. However, the record does not show the respondents were the custodians of the will at any time within 40 days of death. In fact, the existence of the will was not known to respondents until after the safe-deposit box was opened sometime in February 1956. The respondents cannot be held liable for damages for failure to file for probate when they did not have possession of the will. *(Ahlborn v. Peters,* 37 Cal.App.2d 698 [100 P.2d 452].) Furthermore, since appellant was not named as a beneficiary under the will, she has no basis for claiming damages.

No other points raised require discussion.

A careful study of the record convinces us that the following conclusions of the trial court are amply supported by the record and the law:

"That neither of said defendants was obligated to pay all or any part of the cost of removal and reburial of the deceased JEANETTE AUGUSTA BUSH.

"That the said policy of insurance on the life of JEANETTE AUGUSTA BUSH was not subject to any condition or trust for purposes of burial or otherwise.

"That the plaintiff is not entitled to all or any part of the said sum of $500.00 paid to the defendant VIOLET KONITZER under said policy of life insurance.

"That the plaintiff is not entitled to any damages from the defendants, or either of them."

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied July 22, 1963, and appellant's petition for a hearing by the Supreme Court was denied August 20, 1963.