Belknap,
Dec. 6, 1921.

### GEORGE LAVIGNE *v.* EVA L. WILKINSON.

The rights of relatives respecting the care and control of the remains of their dead are a matter of equity jurisdiction and are to be ascertained by a determination of what is reasonable under all the circumstances.

Where an interment has been made with an understanding by all interested parties that the place of burial should be the final sepulchre, a disinterment and removal of the remains should not be decreed except upon evidence of new and unforeseen events, since the burial, which render their exhumation and removal reasonably necessary.

BILL IN EQUITY, to obtain permission for the removal of the remains of the plaintiff's first wife from the place of their original interment, and to restrain the defendant, the decedent's daughter by a former marriage, from interfering therewith. Trial by the court.

The decedent was buried in a lot controlled by the defendant, known as the Bruce lot. Two years after his wife's death the plaintiff remarried, and shortly afterwards he purchased another burial lot, and intended to remove the remains of his wife, and re-inter them therein. The defendant upon learning of his intentions forbade the removal of her mother's body.

Upon the trial of the case the court, having found that the plain-

tiff freely consented to the burial of his wife's remains in the Bruce lot with the intention and understanding that it should be their final resting place, dismissed the bill.

At the close of the evidence the plaintiff's motion for a decree in his favor was denied, to which, and to the dismissal of the bill, he excepted. A bill of exceptions was allowed at the March term, 1921, of the superior court by *Kivel*, C. J.

*Owen & Veazey*, for the plaintiff.

*Jewett & Jewett*, for the defendant.

PLUMMER, J. There is strictly speaking no property in the remains of the dead; but controversies arising relative to their interment or disinterment are in this country, which has no ecclesiastical courts, within the jurisdiction of a court of equity. *Weld* v. *Walker*, 130 Mass. 422.

The following statement of Lord Coke was probably the origin of the doctrine that there is no property in a corpse: "It is to be observed, that in every sepulcher, that hath a monument, two things are to be considered, *viz.* the monument, and the sepulture or buriall of the dead, the buriall of the *cadaver* (that is *caro data vermibus*) is *nullius in bonis*, and belongs to ecclesiasticall cognizance, but as to the monument, action is given (as hath been said) at the common law for defacing thereof." Coke's Third Institute, 203. In this jurisdiction it has been held that while a dead body "is not property in the ordinary sense of the term, it is regarded as property so far as to entitle the relatives to legal protection from unnecessary disturbance and wanton violation or invasion of its place of burial. The plaintiff, notwithstanding he is neither the owner of the soil of the cemetery nor of the remains of his deceased relatives interred there, may nevertheless be authorized to invoke protection against unnecessary desecration of their place of burial." *Page* v. *Symonds*, 63 N. H. 17, 20.

The ruling of the court, dismissing the plaintiff's bill, is based upon the finding that the plaintiff freely consented to the burial of his wife in the Bruce lot with the intention and understanding that it should be her final resting place. This decision appears to be grounded upon the definite rule of law that if a surviving spouse of a deceased married person consents to the burial of the deceased in a certain place, then the survivor cannot disinter and remove the remains against the objection of the next of kin. It has been said

(17 C. J. 1141) that this is the ordinary rule; there are statements, however, in some of the cases cited in support thereof, which indicate that this is not the true rule, but that each case must stand on its own merits, and be decided with reference to its own special and peculiar circumstances.

In *Fox* v. *Gordon*, 16 Phila. 185, the court in discussing the subject of the removal of a dead body from its original sepulchre, used the following language: "If a dispute arises about it among relatives, as in the present case, it must be determined by principles of equity and such considerations of propriety and justice as arise out of the particular circumstances of the case. No general rule to be applied absolutely in all cases can be laid down upon the subject, for what is fit and proper to be done in each case must depend upon the special circumstances of that case. It is a jurisdiction which belongs to equity, and the chancellor will exercise it with great care, having regard to what is due to the natural feelings and sensibilities of individuals as well as what is required by considerations of public propriety and decency."

In *Smith* v. *Shepherd*, 64 N. J. Eq. 401, the court said: When "the remains of the dead have been buried, the right of custody in the surviving husband or wife at once ceases, and it may properly be said that the dead body thereafter is in the custody of the law, because the disturbance of its resting-place and its removal is subject to the control and direction of a court of equity in any case properly before it." The court in *Pierce* v. *Cemetery*, 10 R. I. 227, made the following statement: "Although, as we have said, the body is not property in the usually recognized sense of the word, yet we may consider it as a sort of *quasi* property, to which certain persons may have rights, as they have duties to perform towards it arising out of our common humanity. But the person having charge of it cannot be considered as the owner of it in any sense whatever; he holds it only as a sacred trust for the benefit of all who may from family or friendship have an interest in it, and we think that a court of equity may well regulate it as such, and change the custody if improperly managed. So in the case of custody of children, certain persons are *prima facie* entitled to their custody, yet the court will interfere and regulate it. We think these analogies furnish a rule for such a case, and one which will probably do most complete justice, as the court could always interfere in case of improper conduct."

In *Pettigrew* v. *Pettigrew*, 207 Pa. St. 313, which is cited in 17 Cor-

pus Juris 1141, as sustaining an exception to the ordinary rule, it was said that "the result of a full examination of the subject is that there is no universal rule applicable alike to all cases, but each must be considered in equity on its own merits, having due regard to the interests of the public, the wishes of the decedent, and the rights and feelings of those entitled to be heard by reason of relationship or association."

The views expressed in these cases have been distinctly approved in this state. The court in referring to this subject in *Wilson v. Read,* 74 N. H. 322, 326, said: "The defendants, as owners of the lot, had not the absolute right to disturb the grave already upon the lot. Neither has the plaintiff, as next of kin, an absolute right to prevent the removal of the remains of one buried there, or other use of the land. The rights of each are bounded by rules of propriety and reasonableness determinable by a court of equity upon due application." The rights of relatives and friends respecting the care and control of the remains of their dead can be best determined and administered by the rule of reasonableness. The fact that jurisdiction over these matters is given to courts of equity is a persuasive reason why a liberal procedure in determining the rights of the parties should be adopted. There is nothing that touches more intimately the feelings and sensibilities of people than controversies relating to the disposal and control of the remains of their dead. And such methods should be adopted in dealing with these unfortunate disputes as are best calculated to reach just and equitable results, and to inflict the least trouble and distress upon the parties.

The court in the trial of such an action, having found the facts, should be guided in making his decree by what is fit and proper to be done taking into consideration all the special circumstances surrounding that particular case, due regard being given to the wishes of the decedent, the rights of relatives and friends and the welfare of the public. In a case where the interment was made with the willing consent of all interested parties, and with the understanding that the place of burial should be the final sepulchre, a disinterment and removal of the remains should not be decreed except upon the presentation of strong and convincing evidence showing that it would be unreasonable to refuse to make such a decree. In order to warrant such action new and unforeseen events must have occurred since the burial, which render the exhumation and removal of the remains reasonably necessary.

There should be a new trial in this case, and the court should seek to find what ought to be done under all the circumstances, and render judgment accordingly.

*Exception to the dismissal of the bill sustained: new trial.*

All concurred.