[No. A105260. First Dist., Div. Three. June 10, 2005.]

FRED MAFFEI, Plaintiff and Appellant, v.
WOODLAWN MEMORIAL PARK et al., Defendants and Respondents.

## COUNSEL

Arthur A. Park, Sheila K. Robello and William L. Jacobson for Plaintiff and Appellant.

Gerhard Stoll for Defendant and Respondent Ernie Gabiati.

No appearance for Defendant and Respondent Woodlawn Memorial Park.

## OPINION

**PARRILLI, J.**—Fred Maffei timely appeals from a judgment denying his petition for permission to disinter and reinter the remains of his deceased wife, Flora Maffei. Fred brought his petition under Health and Safety Code section 7526[1] after the cemetery where Flora has been buried for more than 20 years would not consent to removing her body. The cemetery refused consent because Flora's brother, Ernie Gabiati, who owns the crypt where her body lies, would not consent. (Health & Saf. Code, § 7525 [remains of deceased person may be removed from a cemetery plot with consent of the cemetery authority and of surviving spouse].) When the cemetery withholds consent, section 7526 provides "permission by the superior court of the county where the cemetery is situated is sufficient." (Health & Saf. Code, § 7526.) However, section 7526 provides no standard for determining whether to grant permission for disinterment, and there are only two cases interpreting this statute.

---

[1] Unless otherwise indicated, all statutory references are to the Health and Safety Code.

We conclude section 7526 grants the trial court broad discretion, sitting in equity, to consider the particular facts of each case in deciding whether to grant permission to disinter the remains of a deceased person. Because we conclude the trial court did not abuse its discretion in denying the petition, we affirm.

## BACKGROUND

In 1982, Flora died unexpectedly of an aneurysm at the age of 59. Fred was also 59 at the time. They had been married for 34 years. Flora had told Fred and two friends of theirs that upon her death she wanted her remains to be cremated and commingled with Fred's ashes. This was also Fred's wish upon his death. There is no evidence in the record that Flora left any written instructions regarding her wish or that she ever told anyone except Fred and the two friends about it.

The day of Flora's death, Fred went to the mortuary with his mother-in-law, Albina Gabiati, who was around 80 years old at the time. When the funeral director asked whether Flora was to be cremated, Albina asked Fred not to cremate her, and to inter her in the Gabiati family crypt where the remains of Flora's father were interred. Albina promised to pay for the casket if Fred would agree to this arrangement. Fred consented and Albina paid for the casket. Fred testified he consented to Albina's wishes because he was distraught at the time. Fred never told Albina about Flora and Fred's wish to cremate Flora and commingle her ashes with Fred's, or about any plan to later disinter Flora's remains. In fact, at the time of Flora's death and burial, neither Fred nor anyone else mentioned anything about later disinterring Flora's remains.

Eighteen months after Flora's death, Fred remarried. In 1985, after Albina had passed away and had also been interred in the Gabiati family crypt, Fred purchased a crypt at the same cemetery and in the same building as the Gabiati crypt. The purchase was part of his plan to disinter Flora's remains, and carry out their wish to commingle their ashes together in a single urn. Fred also wanted to put in the crypt a separate urn containing the ashes of his second wife upon her death. He did not tell anyone in the Gabiati family he had purchased this crypt.

The first time Fred ever told anyone he wanted to disinter Flora's remains was in 2000 or 2001, almost 20 years after her burial, when he contacted Ernie, Flora's only surviving sibling. Fred assumed that, as Flora's surviving

husband, he had the right to control her remains. He also believed the Gabiati family would not object to disinterment. Fred testified he waited until he was almost 80 years old to try to execute his plan because he realized he was getting near the end of his life and wanted to arrange things the way he and Flora had wanted.

The cemetery told Fred its rules required Ernie's consent (as the crypt owner) to disinter Flora's remains. Ernie was very upset by the idea of moving his sister's remains after so many years. He refused to consent in honor of his mother Albina's memory because she and Flora had been very close. Even after asking consent to disinter Flora's remains, Fred never told Ernie about Flora and Fred's wish to commingle their ashes; the first time Ernie heard of the cremation and commingling plan was at trial.

On June 25, 2003, Fred filed his petition seeking permission to disinter and reinter Flora's remains pursuant to section 7526. The petition named as respondents the cemetery[2] and Ernie. After a one-day court trial, the trial court filed its decision denying Fred's petition on November 14, 2003.[3] The trial court based its denial on (1) the passage of over 20 years between Flora's burial and the instant lawsuit; (2) Fred's consent to Flora's place of burial without any announced reservation; (3) the potential disruption of the other remains in the Gabitati family crypt: (4) Flora's likely objection to sharing a crypt with the remains of Fred's second wife; and (5) "the absence of a compelling reason to disturb the [repose] of the dead."

## DISCUSSION

### I. *Standard of Review: Abuse of Discretion.*

Because of the equitable nature of the proceedings, we conclude the applicable standard of review from a trial court's decision under section 7526 is abuse of discretion. The only two California cases which have interpreted section 7526—*In re Keck* (1946) 75 Cal.App.2d 846 [171 P.2d 933], and *In re Terra* (1952) 111 Cal.App.2d 452 [244 P.2d 921]—suggest that controversies regarding disinterment and reinterment of human remains should be committed to the discretion of the court sitting in equity. (See also *Estate of Jimenez* (1997) 56 Cal.App.4th 733, 739 [65 Cal.Rptr.2d 710] [stating in dicta that *In re Keck* and *In re Terra* hold abuse of discretion standard applies].)

---

[2] The only parties to this appeal are Fred Maffei and Ernie Gabiati. Although the cemetery (Woodlawn Memorial Park) received notice of the petition, it never formally appeared in the action.

[3] No separate judgment appears in the record. As the November 14, 2003 decision appears to constitute the trial court's final determination on the merits, we exercise our discretion to treat it as an appealable judgment. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2004) ¶ 2:258, pp. 2-110.1 to 2-111.)

In *In re Keck,* the court stated that each case involving disinterment " 'must be considered in equity on its own merits.' " The Court of Appeal listed relevant factors for the trial court to consider, and concluded "an appellate court should not interfere with [the trial court's] determination where it finds substantial support in the evidence." (*In re Keck, supra,* 75 Cal.App.2d at p. 851.) Similarly, in *In re Terra,* the court concluded that the grounds upon which a trial court should act in granting permission under section 7526 are the myriad grounds upon which courts of equity would have allowed disinterment and reburial of human remains. (*In re Terra, supra,* 111 Cal.App.2d at p. 457.) Out-of-state disinterment cases, some of which the courts in *In re Keck* and *In re Terra* relied upon, also emphasize the equitable nature of these proceedings. (*In re Keck, supra,* 75 Cal.App.2d at pp. 849, 851; *In re Terra, supra,* 111 Cal.App.2d at p. 457; see, e.g., *Fox v. Gordon* (1883) 16 Phila. 185, 186 [disinterment determined by equitable principles; each case depends upon its own special circumstances]; *Pierce v. Proprietors of Swan Point Cemetery* (1872) 10 R.I. 227, 242–243 [equity jurisdiction in disinterment case]; *Weld v. Walker* (1881) 130 Mass. 422, 423 [same]; *Pettigrew v. Pettigrew* (1904) 207 Pa. 313, 319 [56 A. 878] ["[T]here is no universal rule applicable alike to all [disinterment] cases, but each must be considered in equity on its own merits"]; *Lavigne v. Wilkinson* (1921) 80 N.H. 221 [116 A. 32, 33] (*Lavigne*) [same]; see also 22A Am.Jur.2d (2003) Dead Bodies § 50, p. 48 [disinterment actions are "addressed to the discretion of the court"]; Annot., Removal and Reinterment of Remains (1952) 21 A.L.R.2d 472, § 5 ["[E]xhumation and removal of remains is in the United States a well-recognized province of equity"].)

"From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees, that justice may effectually be carried out. It is of the very essence of equity that its powers should be so broad as to be capable of dealing with novel conditions." (*Bechtel v. Wier* (1907) 152 Cal. 443, 446 [93 P. 75].) It follows that when a trial court exercises its equity powers to decide whether to grant permission for disinterment under section 7526, we review the resulting judgment under the abuse of discretion standard. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 771 [110 Cal.Rptr.2d 861] (*Hirshfield*); see also *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 724 [2 Cal.Rptr.3d 18] [where resolution of conflict between parties "involves consideration of the equities of the case, we use the abuse of discretion standard of review"].) Under that standard, "[d]iscretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage

of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].)

## II. *There Was No Abuse of Discretion*

### A. *The Trial Court Applied the Correct Legal Standards.*

■ Each case decided under section 7526 must be decided on its own merits based on the particular circumstances involved. (*In re Keck, supra,* 75 Cal.App.2d at p. 851; *In re Terra, supra,* 111 Cal.App.2d at pp. 457–458; see also 22A Am.Jur.2d, *supra,* Dead Bodies, § 50, p. 48 [disposition of application for disinterment is "dependent upon the facts and circumstances of each case, and not on any all-inclusive rule"]; Annot., Removal and Reinterment of Remains, *supra,* 21 A.L.R.2d 472, § 1[b] ["[E]ach controversy is decided on its own combination of facts, no one of which is ordinarily decisive"].) Consequently, the particular showing a petitioner must make depends upon the circumstances of that case.

However, there is a well-established presumption against removing the remains of a deceased person, i.e., against disturbing "the repose of the dead." As stated in *In re Terra,* " ' "[m]any circumstances arise from time to time necessitating a disturbance of the repose of the dead, but it must be some controlling public reason or superior private right which should induce the court to permit that to be done which from time immemorial has been considered abstractly as a work of desecration." ' " (*In re Terra, supra,* 111 Cal.App.2d at p. 457; see also *In re Keck, supra,* 75 Cal.App.2d at p. 851 ["presumption against removal grow[s] stronger with remoteness of connection with the decedent"]; cf. 23 Cal.Jur.3d (1975) Dead Bodies, § 16, p. 367 ["[T]he right to undisturbed repose is protected by law both by proscribing, as criminal, acts in violation of sepulture, and by imposing civil liability for the consequences of an unwarranted or illegal disinterment"], fns. omitted.)

This presumption is found throughout disinterment jurisprudence: "Despite the inconsistencies with which American cases on exhumation and removal of remains are rife, to this extent they all agree in principle: The normal treatment of a corpse, once it is decently buried is to let it lie. This idea is so deeply woven into our legal and cultural fabric that it is commonplace to hear it spoken of as a 'right' of the dead and charge on the quick." (Annot., Removal and Reinterment of Remains, *supra,* 21 A.L.R.2d 472, § 2; see also 22A Am.Jur.2d, *supra,* Dead Bodies, § 50, pp. 47–48 ["[C]ourts are generally reluctant to order or sanction the removal of a body after interment, and it is the policy of the law that, except in cases of necessity or for laudable purposes, the sanctity of the grave should be maintained, and a body once suitably buried should remain undisturbed" (fns. omitted.)].)

This presumption is based on protection of "public health and welfare and respect for the dead and the feelings of the decedents' survivors." (22A Am.Jur.2d, *supra*, Dead Bodies, § 50, p. 47.)

Fred argues the trial court imposed too stringent a standard in denying permission to disinter Flora's remains. He points out the court's decision states that " 'strong and convincing evidence' must be shown to justify disinterment" and the court concluded, after discussing other factors, that there was no "compelling reason" in this case to disturb the repose of the dead. Fred contends he sought to do no more than what the petitioner sought to do in *In re Keck*, namely to remove remains from one plot in a cemetery and reinter them in a different plot in the same cemetery. He argues that under that case, he need not have shown more than "that the second plot will furnish a more fitting resting place than the first." (*In re Keck, supra,* 75 Cal.App.2d at pp. 850–851.) The language the trial court used in its decision ("strong and convincing evidence" and "compelling reason") differs from what appears in *In re Keck* and *In re Terra.* (*In re Keck, supra,* 75 Cal.App.2d at p. 851["reasonable cause"]; *In re Terra, supra,* 111 Cal.App.2d at p. 457 ["reasons of substance," "a rare emergency," a "controlling public reason," or a "superior private right"].) However, we conclude in light of the evidence that the trial court's language is entirely consistent with *In re Keck* and *In re Terra* and with general disinterment jurisprudence.

The "strong and convincing evidence" standard cited by the trial court derives from *Lavigne, supra,* 116 A. 32, which is cited by the court in *In re Keck.*[4] (*In re Keck, supra,* 75 Cal.App.2d at p. 851.) The court in *Lavigne* applied this standard in a case, like this one, where there was evidence that the initial "interment was made with the willing consent of all interested parties, and with the understanding that the place of burial should be the final sepulchre." (*Lavigne, supra,* 116 A. at p. 33.) With respect to Flora's initial interment, the trial court properly reached a similar conclusion, based on evidence that Fred consented to it and that there was no mention whatsoever of an alternative burial plan until nearly 20 years later. In such a case, it was permissible for the trial court in exercising its equitable powers to conclude that "disinterment and removal of the remains should not be decreed, except upon the presentation of strong and convincing evidence showing that it would be unreasonable to refuse to make such a decree." (*Lavigne, supra,* 116 A. at p. 33.) This language is in accord with general disinterment jurisprudence. (Annot., Removal and Reinterment of Remains, *supra,* 21 A.L.R.2d 472, § 2 ["Neither the ecclesiastical, common, nor civil system of jurisprudence permits exhumation for less than what are considered weighty, and sometimes compelling reasons"]; 22A

---

[4] Significantly, Fred also relied upon *Lavigne* in the prehearing brief he filed with the trial court.

Am.Jur.2d, *supra*, Dead Bodies, § 50, p. 48 ["[C]ourts generally will not order disinterment of remains in the absence of some sort of showing of necessity, or of substantial, compelling, or valid reasons or reasonable cause for disinterment" (fns. omitted)].)

Moreover, the circumstances in *In re Keck* justified a much lesser showing of necessity than the circumstances of this case warrant. In *In re Keck*, a husband sought to move the cremated remains of a stranger, Frederick Keck, to an adjoining niche where his wife's cremated remains were interred, and to move his wife's cremated remains to Keck's niche. The purpose of the switch was to more "symmetrically" display the flowers for his wife's ashes. The husband had agreed to pay for a perpetual flower display for Keck's ashes, and had obtained the consent of Keck's surviving relatives. A close friend of Keck's intervened to object.. (*In re Keck, supra*, 75 Cal.App.2d at pp. 848–849.)[5] The trial court allowed the ashes to be transferred. In affirming, the Court of Appeal reasoned "that in the case of removal from one plot to another in the same cemetery if the next of kin can convince a court of equity that the second plot will furnish a more fitting resting place than the first an appellate court should not interfere with the determination where it finds substantial support in the evidence." (*Id.* at pp. 850–851.) The court concluded there was "sufficient reason for authorizing the transfer" based on the husband's contract to purchase a perpetual floral tribute for Keck's ashes. "No disrespect is being shown to the ashes of the dead but instead a memorial of living flowers, periodically renewed, is being secured at the slight cost of moving his ashes the very short distance between one niche and its neighbor." (*Id.* at 851.)

In contrast, Fred proposed to do much more than the husband in *In re Keck*. Over Ernie's objection, Fred sought to remove Flora's remains from her family's crypt, where her parents' remains are also interred, to have her remains cremated, and eventually to commingle them with his own ashes and place them in another crypt with the remains of his second wife. It was proper for the trial court to require Fred to make a greater showing of necessity for Flora's disinterment and reinterment than the trial court required in *In re Keck* to merely switch niches.

B. *The Trial Court Properly Considered the Relevant Factors.*

In exercising its discretion to decide whether to allow disinterment and reinterment of remains, among the factors a court should give due regard

---

[5] *In re Keck* was not actually decided under section 7525 or 7526 because section 7528 provides that this statutory scheme "does not apply to or prohibit the removal of any remains from one plot to another in the same cemetery." (Health & Saf. Code, § 7528; see *In re Keck, supra*, 75 Cal.App.2d at pp. 848–849.) However, the case was decided as "a suit in equity," just as it would have been decided under section 7526. (75 Cal.App.2d at p. 849.)

"are the interests of the public, the wishes of the decedent, the rights and feelings of those entitled to be heard by reason of relationship or association with the decedent, the degree of relationship to the decedent of those opposing or seeking disinterment, the conduct of the parties seeking and opposing reinterment, especially as it relates to the circumstances of the original interment, the integrity and capacity of the person seeking reinterment to provide a secure and comparable resting place for the decedent, any agreement with, or regulations of, the persons or associations maintaining the cemetery in which the decedent is buried, and whether consent was given, by persons with authority to do so, to the burial in the first place of interment." (22A Am.Jur.2d, *supra*, Dead Bodies, § 65, p. 59; see also *In re Keck, supra*, 75 Cal.App.2d at p. 851 [listing five of the same factors]; see also *In re Terra, supra*, 111 Cal.App.2d at p. 457 [quoting *In re Keck* with approval and adding to the list "the conventions of common decency" and "the prohibitions of religious law"]; Annot., Removal and Reinterment of Remains, *supra*, 21 A.L.R.2d 472, § 1[b] [courts look to the connection the litigating parties had with the decedent, the interest they have in disposition of her remains, and reasons pro and con disinterment].) In this case, the record shows the trial court properly considered the factors relevant to this case, i.e., Flora's wishes, the rights and feelings of Fred and Ernie, Fred's consent to the original interment, and Fred's behavior in seeking to disinter Flora's remains after nearly 20 years.

■ Fred relies on *In re Keck* to argue the trial court failed to give Flora's wishes their due weight. (*In re Keck, supra*, 75 Cal.App.2d at p. 851 [" '[S]peaking generally, perhaps primary importance is given to the wishes of the deceased.' "].) However, we cannot say the trial court abused its discretion by refusing to give the decedent's wishes precedence in this particular case. In an equitable proceeding to disinter remains, there is no requirement that the deceased's wishes override the other factors relevant to the case. (*Estate of Jimenez, supra*, 56 Cal.App.4th at p. 739 ["The question of disinterment and reinterment involves numerous considerations in addition to the wishes of the deceased"].) Indeed, as in this case, the deceased's wishes often are indistinguishable from those of the living petitioner: "[T]hough decent interment is often phrased as a right of the dead, it is in legal reality a duty owed the living. Even when a court takes positive action and orders a decedent's remains to be accorded the treatment [she] requested for them, it is actually enforcing a right of a living petitioner. The right is that of a survivor having an understandable emotional or religious interest in seeing a loved one interred in the place and manner [she] desired." (Annot., Removal and Reinterment of Remains, *supra*, 21 A.L.R.2d 472, § 13[a].)

■ Nor was the trial court required to give Fred's wishes precedence, as Fred contends. In support of this argument, he cites sections 7100 and 7525.

Section 7100 gives precedence to a surviving spouse over a surviving sibling and other relatives in determining the *initial* disposition of the remains of a deceased person: "(a) The right to control the disposition of the remains of a deceased person, the location and conditions of interment . . . unless other directions have been given by the decedent pursuant to Section 7100.1 [in writing], vests in . . . the following in the order named: [¶] . . . [¶] (2) The competent surviving spouse. [¶] . . . [¶] (5) The sole surviving competent adult sibling of the decedent . . . . [¶] . . . [¶] (e) This section shall be administered and construed to the end that the expressed instructions of the decedent or the person entitled to control the disposition shall be faithfully and promptly performed." (Health & Saf. Code, § 7100, subds. (a), (e); see *id.*, § 7100.1; see also *Estate of Jimenez, supra,* 56 Cal.App.4th at p. 739 [section 7100 relates to burial in the first instance].)

■ Similarly, section 7525 gives precedence to a surviving spouse over a surviving sibling regarding the consent necessary to remove remains from a cemetery plot when the cemetery consents to such removal: "The remains of a deceased person may be removed from a plot in a cemetery with the consent of the cemetery authority and the written consent of one of the following in the order named: (a) The surviving spouse. [¶] . . . [¶] (d) The surviving brothers or sisters." (Health & Saf. Code, § 7525, subds. (a), (d).)

■ But this action was not brought under either section 7100 or 7525; it was brought under section 7526, which does not give priority to the wishes of any surviving relative or other person. Section 7526 merely states: "If the required consent can not be obtained, permission by the superior court of the county where the cemetery is situated is sufficient." (Health & Saf. Code, § 7526; see also *In re Terra, supra,* 111 Cal.App.2d at p. 457 [while section 7525 mentions permission of surviving relatives and of cemetery for removal, section 7526 is silent regarding factors for permission and is governed instead by equitable consideration of myriad factors].) In an action brought under section 7526, the trial court should consider "what connection the litigating parties had with the decedent and what interest they have in the disposition" of her remains. (Annot., Removal and Reinterment of Remains, *supra,* 21 A.L.R.2d 472, § 1[b].) Depending on the circumstances, this often will result in giving greater weight to the wishes of a surviving spouse than to the wishes of other interested parties, but not necessarily. (22A Am.Jur.2d, *supra,* Dead Bodies, § 60, p. 56 [while right of disinterment generally lies with surviving spouse, such right is not absolute and is subject to judicial control; "there is a substantial diminution of the surviving spouse's primary right, as against the next of kin, to control the burial of the deceased spouse, once the body has been laid to rest"].)

In fact, in *In re Terra,* the Court of Appeal concluded the trial court erred by giving undue weight to the wishes of the surviving spouse and failing to

consider other relevant factors. Amelia Oliveira sought to disinter the remains of her husband, and also of her two sons, from a Roman Catholic cemetery in order to cremate them and place them in a columbarium. She based her petition under section 7526 on the cemetery's breach of its contract to provide perpetual care for her loved ones' graves. The trial court granted permission over the objection of the cemetery authorities, which also included the Archbishop of San Francisco. (*In re Terra, supra*, 111 Cal.App.2d at pp. 453–454.) The Court of Appeal reversed, concluding the trial court erred in considering "only the interests and rights of the surviving relative and of the cemetery authority, viewed in the light of a contractual relationship between them," and in not considering other relevant factors. (*Id.* at pp. 456–457.)

Fred incorrectly asserts the trial court also erred in relying on Fred's consent "to the place of burial without any announced reservation" as a reason for denying permission for disinterment. But it was proper for the trial court to consider Fred's consent, and the circumstances surrounding it, in weighing the equities of the case. *In re Keck* states the court may consider " 'whether consent was given to the burial in the first place of interment.' " (*In re Keck, supra*, 75 Cal.App.2d at p. 851.) Similarly, the court in *In re Terra* based its decision in part on the consent of the surviving parent and wife to the burial of her sons and husband in a catholic cemetery. (*In re Terra, supra*, 111 Cal.App.2d at p. 459 [noting she "took an active part in arranging for their burial in full accordance with the tenets of their church"].)

Similarly, contrary to what Fred contends, the trial court was entitled to rely on the passage of more than 20 years since Flora's burial as a factor weighing against disinterment of her remains. (22A Am.Jur.2d, *supra*, Dead Bodies, § 71, p. 63 ["Among the factors that a court should consider in determining whether reinterment should be allowed is the length of time that has elapsed since the original interment"]; see also *In re Terra, supra*, 111 Cal.App.2d at pp. 458–459 [emphasizing passage of 10 and 22 years respectively since burial of husband and of one of the sons in reversing grant of permission to disinter their remains].)

## C. *There Are No Factual Mistakes Mandating Reversal.*

Fred argues the trial court made factual mistakes mandating reversal. We conclude there was no reversible error.

The first asserted mistake concerns the quality of Fred's consent to Flora's burial. Fred contends the court mistakenly concluded that Fred's agreement to allow Flora's mother to pay for the casket in return for his consent to the burial arrangement was inconsistent with Fred's proffered reason for his

consent—that he was distraught over Flora's sudden death. We conclude the trial court's assessment of Fred's testimony and the inferences the court drew from it were reasonable. (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418] [Under abuse of discretion standard, "[w]hen two or more inferences can reasonably be deduced from the facts, [we have] no authority to substitute [our decision] for that of the trial court"].)

The next alleged mistake concerns how many urns of cremated remains Fred's crypt could accommodate. Fred contends the trial court mistakenly concluded that the crypt could not accommodate all four of the urns Fred planned to inter there. However, Fred's own testimony supports the court's conclusion. He testified his plan was to inter four separate urns in the crypt: Flora and his remains in one; his second wife's in another; and two urns with dog remains. He also testified the cemetery only allowed three urns of cremated remains in one crypt. Thus, the court properly concluded that "something will have to give." Moreover, even if the court was mistaken, it does not appear the decision was based on the mistake. The court listed five reasons in support of its decision, and only referred to this urn issue in a footnote to one of the reasons—Flora's likely objection "to sharing the crypt with [Fred's second] wife's remains." Fred also contends this particular reason itself is improper because it is based on speculation. While it is true there is no evidence in the record indicating Flora would not have wanted a second wife's ashes in the same crypt with her, the court was entitled to consider how circumstances have changed since Flora expressed her wishes. (See *Datz v. Dougherty* (Court & County, Pa. 1941) 41 Pa. D. & C. 505, 515 ["[A]s long as remarriages continue and survivors seek to assemble departed spouses, the dead are entitled to a protected peace"].)

The final asserted mistake was the court's reliance on "the potential disruption of the other bodies in the [Gabiati] crypt." There is no evidence in the record that the remains of Flora's parents would physically be disturbed if Flora's remains were removed from the Gabiati family crypt. However, even absent such evidence, the court could conclude that, simply by entering the crypt and removing the remains of one of the three bodies, there would be an intangible disturbance in the sense of disrespect for, or an interruption of, the repose of the other dead there. And there is evidence regarding Ernie's feelings about disturbing this burial arrangement which had been so important to his mother. (*Hirshfield, supra,* 91 Cal.App.4th at p. 765–766 ["[A] judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance"].)

## DISPOSITION

The judgment entered November 14, 2003 is affirmed.

McGuiness, P. J., and Pollak, J., concurred.