Filed 1/31/22  Zepeda-Lara v. County of Fresno CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SYLVIA ZEPEDA-LARA,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>COUNTY OF FRESNO,<br><br>　　Respondent. | F081185<br><br>(Super. Ct. No. 19CECG01554)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Sylvia Zepeda-Lara, in pro. per., for Plaintiff and Appellant.

Daniel C. Cederborg, County Counsel, Catherine E. Basham and Scott Hawkins, Deputy County Counsel for Respondent.

-ooOoo-

Sylvia Zepeda-Lara appeals from a judgment denying her petition to disinter and reinter the cremains of her brother, Gilbert Zepeda.  Zepeda-Lara brought her petition under Health and Safety Code section 7526 after the County of Fresno (County), operator of the cemetery where Gilbert's cremains were interred in 2009, would not consent to the disinterment.  County withheld consent because the practicalities of disinterment made the identification and retrieval of Gilbert's cremains improbable, and because

disinterment of Gilbert's cremains would likely require the disinterment of the cremains of 306 other persons. Zepeda-Lara contends that County in effect consented to the disinterment, and alternatively that the trial court abused its discretion in denying her petition to disinter. We disagree and therefore affirm the judgment.

## FACTS

Gilbert Zepeda died indigent, intestate, and unclaimed in Fresno in May 2006. Gilbert was then cremated and County assumed control over the cremains because the county deputy coroner assigned to Gilbert's case identified no next of kin. In 2009, Gilbert's cremains were interred in County's own cemetery, Potters' Field. Gilbert's cremains were interred in an unsealed concrete burial liner that also held the cremains of 306 other unclaimed persons. Gilbert's cremains, like those of most of the other 306 individuals, were likely placed into a plastic box measuring 6.5 inches wide, 4.5 inches deep, and 8.5 inches tall. The interior of the common burial liner was open and did not contain separate compartments for each of the containers or urns in which the 307 persons' cremains were placed.

Typically, cremains interred by County are placed in a plastic bag, which is then sealed with a zip tie or tape, and placed into the cremains container. Adhesive paper labels containing the name of the deceased, if known, and the name of the funeral home performing the cremation are placed on the outside of the cremains containers. It is also standard practice for funeral homes to use a metal crematory identification token to identify the deceased. Usually there is a serial number on the token, which is associated with the particular decedent by way of records maintained by the cremating funeral home. Gilbert was cremated by the Chapel of the Light funeral home. Chapel of the Light funeral home has been unable to locate its log that contains Gilbert's name and associated serial number. County did not maintain any method of identifying where within the burial liner Gilbert's cremains were placed.

In addition to Zepeda-Lara, Gilbert's surviving family consisted of his mother, two children, and six other siblings. Gilbert's surviving family remained unaware of his death for more than 10 years after it occurred. When Gilbert's surviving family became aware of his death and interment in Potters' Field, they decided to move Gilbert's cremains from Potters' Field to Northern California. In December 2016, Gilbert's surviving family contacted County's counsel, and sought guidance on the disinterment of Gilbert's cremains. In 2018, County's counsel told Gilbert's surviving family that County would be unable to disinter Gilbert's cremains without a court order. County's counsel also told Gilbert's surviving family that County would not otherwise interfere with any attempt by the surviving family to obtain a court order for the disinterment. Upon County's request, Gilbert's surviving family agreed to reimburse County for the costs of any court-ordered disinterment.

## PROCEEDINGS

In May 2019, Zepeda-Lara, through counsel, filed a petition for the disinterment of Gilbert, pursuant to Health and Safety Code section 7526 (petition). In June 2019, County filed a responsive document styled "ADVISORY POINTS AND AUTHORITIES IN RESPONSE TO PETITION FOR DISINTERMENT," also pursuant to Health and Safety Code section 7526.[1]

The petition alleged that County would not allow disinterment of Gilbert without a court order. It also alleged that all of Gilbert's surviving family desired to have his cremains disinterred so that the cremains could be reburied near Gilbert's surviving family in Northern California. The petition was accompanied by Zepeda-Lara's supporting declaration, but not by any written authorization for the disinterment of Gilbert from any other members of Gilbert's surviving family. Zepeda-Lara's supporting declaration asserted that none of Gilbert's "siblings, children, or heirs at law oppose the

---

[1]     Subsequent references are to the Health and Safety Code, unless otherwise noted.

3.

Petition for Disinterment, or the transfer of his cremains from Fresno County to Northern California."

County responded that it was unwilling to provide consent to the disinterment of the cremains of Gilbert because those cremains were interred in a mass burial along with the cremains of 306 other individuals. County contended that given the likely state of the various cremains interred with Gilbert's, searching for Gilbert's cremains would necessarily entail the disinterment of some or all of the cremains of the 306 other individuals for whom written consent for disinterment was needed and could not be obtained. County also contended that it had not been provided with the required written consent to the disinterment of Gilbert's cremains from any of Gilbert's family members, as required by section 7525. Moreover, County contended that even if disinterment of Gilbert's cremains were judicially ordered, County might possibly not be able to identify the cremains.

On March 19, 2020, the trial court held a hearing on the petition. Following that hearing, the trial court adopted its tentative ruling on the matter and denied Zepeda-Lara's petition. The trial court ruled that the factors courts have historically considered in deciding to disinter remains weighed against disinterment in Gilbert's case. Specifically, the trial court held that the passage of time since Gilbert's interment, the probable disruption of the other 306 cremains, and the remote likelihood of being able to identify Gilbert's cremains warranted the denial of the petition. Zepeda-Lara timely appealed.

**DISCUSSION**

I.    BASIC LEGAL PRINCIPLES

A.    Standard of Review

The only California cases that have interpreted section 7526 in depth (*Maffei v. Woodlawn Memorial Park* (2005) 130 Cal.App.4th 119 (*Maffei*); *Estate of Jimenez*

4.

(1997) 56 Cal.App.4th 733; *In re Keck* (1946) 75 Cal.App.2d 846, and *In re Terra* (1952) 111 Cal.App.2d 452) each suggest or conclude "that controversies regarding disinterment and reinterment of human remains should be committed to the discretion of the court sitting in equity." (*Maffei*, *supra*, at p. 123; see also *Estate of Jimenez*, *supra*, at p. 739; *In re Keck*, *supra*, at p. 851; *In re Terra*, *supra*, at p. 457.)

"Because of the equitable nature of the proceedings, . . . the applicable standard of review from a trial court's decision under section 7526 is abuse of discretion." (*Maffei*, *supra,* 130 Cal.App.4th at p. 123.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272.) "The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

"The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) Of particular consequence to this case, both a trial court's express and implied findings of fact are accepted by appellate courts if supported by substantial evidence. (*Smith v. Adventist Health/West et al*. (2010) 182 Cal.App.4th 729, 739.) "Recognition of, and deference to, implied findings is derived from the principle that an appellate court must interpret the facts in the light most favorable to the prevailing party and indulge all reasonable inferences in support of the trial court's decision …." (*Ibid.*)

## B. Disinterment of human cremains

California law governs the disinterment of human cremains. It regards cremated human remains as "human remains" for purposes of their interment and disinterment. (§§ 7001, 7525.) The law provides that cremains may be disinterred with the consent of both the "cemetery authority" of the cremains and the written consent of the decedent's next of kin. (§ 7525.) A "cemetery authority" is defined as a "cemetery association … or other person owning or controlling cemetery lands or property." (§ 7018.) As the owner and operator of Potters' Field, where Gilbert's cremains are interred, County is the "cemetery authority" in this case.

The classes of persons with priority to consent to the disinterment of their next of kin's cremains are listed in descending order in the Health and Safety Code. Surviving spouses have initial priority, followed by surviving children, surviving parents, and surviving siblings. (§ 7525.)

If the required consent of the cemetery authority and next of kin cannot be obtained, however, then "permission by the superior court of the county where the cemetery is situated is sufficient" for the cremains of a deceased person to be removed from a plot in a cemetery. (§ 7526.)

## II. MERITS OF THE APPEAL

### A. Contentions of the Parties

Zepeda-Lara contends as a threshold matter that County's stated position of general non-opposition in its response to her petition is tantamount to consent to the removal of Gilbert's cremains and, on that basis alone, her petition for disinterment should have been granted. County contends that its general non-opposition to the disinterment of Gilbert's cremains cannot properly be construed as consent to such disinterment because of the impossibility of County obtaining the necessary consent for disinterment of the 306 other persons' cremains.

Zepeda-Lara also contends that as Gilbert's surviving family member with statutory authority to obtain a petition for the disposition of his cremains, her petition for disinterment of those cremains should have been granted as a matter of right. County contends that Zepeda-Lara's status as Gilbert's surviving sibling is not controlling, because the ranked order of surviving family members is a function of section 7525, and Zepeda-Lara's petition was filed pursuant to section 7526, which utilizes equitable principles, not statutory hierarchy, as its guiding principle.

Zepeda-Lara further contends that the trial court wrongfully relied on unfounded, speculative assertions in reaching its factual findings.

Zepeda-Lara lastly contends that the trial court erred when it utilized equitable principles to reach its ruling, and should instead have applied a sufficiency of the evidence and good cause standard of review to the petition. County contends that the decisional law interpreting section 7526 consistently holds that a court considering a petition for disinterment pursuant to section 7526 does so as a court of equity, and the trial court in this case properly followed form.

B.    Analysis

1.    *County did not consent to Gilbert's disinterment*

Zepeda-Lara's contention that County consented to Gilbert's disinterment fundamentally misreads County's position on that issue. County's response to Zepeda-Lara's petition for disinterment, though styled "advisory points and authorities in response" rather than as an "opposition," plainly stated that County was "unwilling to provide consent to the disinterment of the cremains of the Decedent, GILBERT ZEPEDA, because the cremains of GILBERT ZEPEDA were interred in a mass burial along with the cremains of three hundred six (306) other individuals for whom written consent for disinterment cannot be obtained." As the language of County's response patently states, County did not provide consent to the disinterment of Gilbert's cremains.

7.

While County's response did state that County "otherwise" did not oppose Zepeda-Lara's petition, County's response clearly opposed the petition on the ground that disinterring Gilbert's cremains would necessarily entail disinterring the cremains of 306 other persons. Limiting a refusal to consent to a single reason cannot be construed as providing consent. The fact that County openly invited judicial intervention and decision-making to resolve the dispute between Zepeda-Lara and County is itself an indication of County's lack of consent, as well as a clear indication that a controversy existed between the parties. Simply put, County did not consent to Gilbert's disinterment.

### 2. *Zepeda-Lara was not statutorily entitled to relief*

Zepeda-Lara's contention that her status as Gilbert's sibling automatically entitled her to relief by virtue of vesting in her a statutory right to the disposition of Gilbert's cremains is based on a misguided application of statutory authority.

Zepeda-Lara's reliance on section 7525 is misplaced because her petition was filed pursuant to section 7526, not section 7525. Section 7525 applies to circumstances in which the consent of both the relevant cemetery authority and specified family members (in order of priority) to a disinterment are obtained. (§ 7525.) Because County, as the relevant cemetery authority, did not consent to Gilbert's disinterment, section 7525 is not applicable. Section 7526 governs circumstances like this, where the required consent of the cemetery authority and/or the specified surviving family members cannot be obtained. (§ 7526.)

Section 7526 contains no hierarchical ranking of surviving family members with authority to consent to disinterment. It simply states that "[i]f the required consent cannot be obtained, permission by the superior court of the county where the cemetery is situated is sufficient." (§ 7526.) Section 7526 "does not give priority to the wishes of any surviving relative or other person." (*Maffei, supra,* 130 Cal.App.4th at p. 129.) Decision-making by a court pursuant to section 7526 is instead governed by equitable factors. (*In re Terra, supra,* 111 Cal.App.2d 452, 457.)

8.

Zepeda-Lara's reliance upon section 7100 is likewise unhelpful, because section 7100 is not applicable to the facts of this case. Zepeda-Lara's reliance upon section 7100 is based on that statute's decision-making hierarchy to control the disposition of human remains. Pursuant to section 7100, the right to control the disposition of remains vests in a tiered ranking of classes of persons. Surviving siblings such as Zepeda-Lara are ranked fifth, behind agents, spouses, adult children, and parents. (§ 7100, subd. (a)(5).) Section 7100, however, applies to the initial custody and duty of interment of remains (including arrangements for funeral goods and services). (*Walker v. Konitzer* (1963) 217 Cal.App.2d 654, 660.) Zepeda-Lara does not cite, and we do not find, any cases applying section 7100 to later disinterments and reinterments occurring 15 years after the death of an unclaimed decedent. Moreover, section 7026 does apply to disinterments and reinterments, even those occurring years after initial interments. Section 7026 does not reference section 7100 as a guide to decision-making. Rather than a statutory hierarchy, a court ruling on a petition for disinterment pursuant to section 7026 exercises "broad discretion, sitting in equity, to consider the particular facts of each case in deciding whether to grant permission to disinter the remains of a deceased person." (*Maffei*, *supra*, 130 Cal.App.4th at p. 122.) Equitable principles, in other words, not statutory hierarchies, guide courts' decision-making under section 7026.

Zepeda-Lara's reliance upon section 7024 in support of her contention is similarly misplaced. She relies on section 7024 to bolster her claim of decision-making priority over the disinterment of Gilbert's cremains. Zepeda-Lara's argument seems to be that since Health and Safety Code section 7024 defines the term "permit for disposition of human remains" to include "burial permit," and notes that such a permit is "issued, pursuant to law, for the interment, disinterment, removal, reinterment or transportation of human remains" it has some bearing on Gilbert's disinterment. (§ 7024.) No "permit for disposition of human remains," however, was issued, utilized, or required for the interment of Gilbert's cremains.

9.

Because Gilbert was unclaimed by any next of kin at the time of his death, his cremains were kept by the county coroner, and were presumptively interred pursuant to section 7104. That statute specifies where an estate "is insufficient to provide for interment and the duty of interment does not devolve upon any other person residing in the state, or if such person can not after reasonable diligence be found within the state the person who has custody of the remains may require the coroner of the county where the decedent resided at the time of death to take possession of the remains and the coroner shall inter the remains in the manner provided for the interment of indigent dead." (§ 7104, subd. (a).) Gilbert died indigent and no other person with the duty of interring Gilbert was found, as described by Zepeda-Lara herself in her petition.

Moreover, permits for disposition of human remains are required by "persons" to dispose of human remains. (§ 103050, subd. (a).) They are obtained by such persons from a local registrar to enable the persons to dispose of human remains. (§ 103050, subd. (a)(2).) County, however, is not a person, and did not need a permit from a local registrar to dispose of human remains in its own cemetery. Furthermore, Zepeda-Lara relied explicitly and exclusively (and properly) on section 7026 as authority for her petition for the disinterment of Gilbert's cremains, not on section 7024. Zepeda-Lara's invocation of section 7024 in support of her contention is therefore incorrect.

3.      *The trial court did not abuse its discretion in denying the petition*

Zepeda-Lara's contention that the trial court erred in applying equitable principles to reach its ruling on her petition for disinterment is incorrect. Trial court proceedings under section 7526 are equitable in nature. (*Maffei*, *supra*, 130 Cal.App.4th at p. 123, *Estate of Jimenez*, *supra*, 56 Cal.App.4th at p. 739; *In re Keck*, *supra*, 75 Cal.App.2d at p. 851; *In re Terra*, *supra*, 111 Cal.App.2d at p. 457.) The trial court thus correctly utilized equitable considerations when evaluating Zepeda-Lara's petition to disinter Gilbert's cremains.

10.

The trial court's conclusion that the balance of equities favored denying Zepeda-Lara's petition for disinterment was not an abuse of its discretion. " 'From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees, that justice may effectually be carried out. It is of the very essence of equity that its powers should be so broad as to be capable of dealing with novel conditions.' " (*Maffei*, *supra,* 130 Cal.App.4th at p. 124, quoting *Bechtel v. Wier* (1907) 152 Cal. 443, 446.) While " ' "[m]any circumstances arise from time to time necessitating a disturbance of the repose of the dead, … it must be some controlling public reason or superior private right which should induce the court to permit that to be done which from time immemorial has been considered abstractly as a work of desecration." ' " (*In re Terra*, *supra*, 111 Cal.App.2d at p. 457.) Zepeda-Lara presented no controlling public reason or superior private right to the trial court to warrant the disinterment of Gilbert's cremains.

Furthermore, the trial court utilized proper factors in the exercise of its equitable judgment in this case, and its express and implied factual determinations made in weighing those factors are supported by sufficient evidence.

a. The passage of time

Contrary to Zepeda-Lara's assertions, the trial court's decision-making properly considered the passage of time as a factor in this case. "Among the factors that a court should consider in determining whether reinterment should be allowed is the length of time that has elapsed since the original interment. Generally, the sooner the person seeking reinterment acts after the original interment, the better the chance of obtaining reinterment." (22A Am.Jur.2d (2003) Dead Bodies, § 71, p. 63; see *Maffei*, *supra*, 130 Cal.App.4th at p. 126 [emphasizing that the alternative burial plan was proposed nearly 20 years after the initial interment]; *In re Terra, supra*, 111 Cal.App.2d at p. 458-459 [emphasizing passage of 10 and 22 years, respectively, since the burial of a husband and of a son in reversing grant of permission to disinter their remains].)

11.

In *Maffei*, the petition of a widower to disinter his deceased wife's remains was denied, and the widower appealed. The appellate court affirmed, concluding that the trial court did not abuse its broad discretion, sitting in equity, in considering the particular facts of the case. (*Maffei*, *supra*, 130 Cal.App.4th at p. 122.) In that case, the wife's remains were buried in 1982 in her family's crypt, notwithstanding her professed wish to be cremated and to have her cremains co-mingled with those of her husband. (*Ibid.*) In 2000 or 2001, some 20 years after his wife's death, her widower approached her surviving family members about disinterring, cremating, and moving her remains from the family crypt. (*Id.* at pp. 122-123.) The appellate court held "the trial court was entitled to rely on the passage of more than 20 years since [wife's] burial as a factor weighing against the disinterment of her remains." (*Id.* at p. 130.)

In *In re Terra*, the petition of a surviving spouse and parent of three decedents to disinter was granted, and The Roman Catholic Archbishop of San Francisco appealed. The appellate court reversed, in part on the basis that the passage of 22 years since the death of one decedent, and 10 years from the death of another decedent was a factor weighing against granting the petition for disinterment. The appellate court observed that " '[w]ith respect to reinterment, it has been said the same rules apply as to the original interment, but with a presumption against removal growing stronger with the remoteness of the connection with the decedent and reserving always the right of the court to require reasonable cause to be shown for it.' " (*In re Terra*, *supra*, 111 Cal.App.2d at p. 458.)

It was undisputed that Zepeda-Lara, like Gilbert's other surviving family members, remained unaware of Gilbert's death for 10 years after it occurred. Three additional years passed before Zepeda-Lara filed her petition for disinterment. These facts do not indicate that an emergent situation exists, or that otherwise the law's decided preference for interred human remains to be undisturbed should be countermanded in this case.

12.

The passage of time is also significant insofar as the longer the period of time that the unsealed interment vessel was exposed to water seepage and other factors of decay, the more likely that the adhesive paper labels and the containers of cremains themselves have decomposed, and the less likely it is that Gilbert's cremains can be identified. Further, the 306 other cremains interred with those of Gilbert in Potters' Field have had 15 years of repose at this point. As *Maffei* and *In re Terra* held, the longer the passage of time, the more equities weigh against disinterment. The trial court therefore properly considered the passage of 15 years' time as an equitable factor to be considered in this case.

### b. The potential disruption of others' cremains

The trial court's consideration of the potential disruption of the cremains of the other 306 persons interred with Gilbert was also an appropriate exercise of its discretion as a court sitting in equity.

Courts may properly conclude that by simply entering a place of mutual interment and removing one set of remains from the others, "there would be an intangible disturbance in the sense of disrespect for, or an interruption of, the repose of the other dead there." (*Maffei*, *supra*, 130 Cal.App.4th at p. 131.) The 306 other persons interred with Gilbert deserve repose no less than he. Like Gilbert, those persons found themselves in circumstances that led upon their deaths to being unclaimed, even unknown. The unclaimed and unknown, however, are not undeserving. "[T]he right to undisturbed repose is protected by law, both by proscribing acts as criminal and by imposing civil liability for the consequences of an unwarranted or illegal disinterment." (23 Cal.Jur.3d (2021) Dead Bodies § 26; see *Maffei*, *supra*, 130 Cal.App.4th at p. 125.) The trial court's acknowledgement of that fact by way of its utilization of this factor in deciding against granting Zepeda-Lara's petition for disinterment of Gilbert's cremains was proper. The trial court's conclusion reached after consideration of this factor was well within the scope of its discretion.

*In re Terra*, endorsed the proposition that " '[j]udicial examination of the problem has resulted in the rule that, unless reasons of substance exist or a rare emergency arises, the repose of the dead should not be disturbed.' " (*In re Terra, supra,* 111 Cal.App.2d at p. 457.) *In re Terra* also endorsed the expressed sentiment that " 'it must be some controlling public reason or superior public right which should induce the court to permit that to be done which from time immemorial has been considered abstractly as a work of desecration.' " (*Id.* at pp. 457–458, quoting *In re Ackermann* (1908) 109 N.Y.S. 228, 229.) We find no such rare emergency, controlling public reason, or superior public right existed here.

*Maffei* involved the potential disinterment of a single set of remains. *In re Terra* involved the proposed disinterment of two sets of remains. In this case, Zepeda-Lara's petition potentially involves 307 sets of remains. The same equitable factors that weighed against disinterring remains in *Maffei* and *In re Terra* apply a fortiori to the facts and circumstances of this case. Even if the cremains of some of the 306 other persons were to be merely "disturbed," rather than completely disinterred, such movement would still disturb their repose. Protection of the rights of the 306 other individuals to lie undisturbed was a proper factor for the trial court to consider in reaching its conclusions, even when balanced against Zepeda-Lara's interest in having her brother interred nearer to his family.

c. <u>The unlikelihood of identifying Gilbert's cremains</u>

The trial court's consideration of the unlikelihood of actually being able to identify and segregate Gilbert's cremains from those of the 306 other persons with whom his cremains were interred was likewise a proper exercise of equitable judgment.

County informed the trial court that there were no records of the serial number assigned to Gilbert's cremains. This factor is significant because County also informed the trial court that the condition of any identifying label affixed to the exterior of the container with Gilbert's cremains was unknown, but quite possibly was poor to the point

14.

of illegibility. Impliedly, if County cannot be sure that the label on the outside of Gilbert's container is still legible, it cannot be sure that the similar labels on any of the other 306 containers interred with Gilbert's cremains are still legible, either. All of the containers of cremains and their labels were simultaneously buried the same time many years ago and have been subject to the same forces of deterioration and erosion since then. Even if, as Zepeda-Lara hopes, Gilbert's cremains are in the very top layer within the interment container, if the identifying labels are illegible or missing, it may well still be impossible to know with certainty which cremains are Gilbert's.

The trial court did not abuse its discretion when it relied on the unlikelihood of identifying Gilbert's cremains in reaching its decision. Given the sworn representations of County regarding the probable condition of the labels and the containers holding the cremains of Gilbert and the 306 other persons, disturbing the 307 decedents for what could well be an exercise in futility was a proper consideration by the trial court.

### d. Challenge to Coroner's declaration

Zepeda-Lara complains that the trial court relied on "unfounded and speculative concerns" when it evaluated her petition for disinterment. In particular, Zepeda-Lara complains that the deputy coroner's declaration appended to County's response to her petition was devoid of percipient knowledge. She did not object to the declaration in the trial court and has thus forfeited her challenges on appeal. (See *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal"].)

In any event, a trial court's express and implied findings of fact are accepted by appellate courts if supported by substantial evidence. (*Smith, supra,* 182 Cal.App.4th at p. 739.) The sworn declaration of County's lead deputy coroner on how County burials of unclaimed persons are handled constituted such substantial evidence. She had experience in County's sheriff-coroner's office since 2002. Further, her declaration expressly noted the ambit of her personal knowledge, her knowledge of the customs and

15.

practices of the coroner's office, and when it was based on her personal review of the coroner's burial records pertaining to Gilbert. The trial court's express and implied findings of fact were therefore based on substantial evidence.

C.    Conclusion

County did not consent to Zepeda-Lara's petition for disinterment; rather, it specified that it was unwilling to provide such consent. Zepeda-Lara's status as Gilbert's surviving sibling did not statutorily empower her to have her petition automatically granted. Here, the primary public policy consideration requiring a proper respect for the remains of the dead, and the feelings and desires of those entitled to be heard by reason of relationship and association, were considered and evaluated by the trial court, properly sitting as a court in equity. The trial court properly utilized and weighed established equitable factors and principles in denying Zepeda-Lara's petition—the passage of time since Gilbert's interment, the probable disruption of the other cremains, and the remote likelihood of being able to identify Gilbert's cremains. The trial court decided on balance in favor of the propriety of not disturbing the cremains of the 306 other persons, some 15 years after their interment, over the expressed desire of a single decedent's surviving family to be potentially fulfilled. No abuse of discretion has been shown.

**DISPOSITION**

The judgment is affirmed. Each party shall bear its own costs on appeal.


FRANSON, ACTING P. J.

WE CONCUR:


PEÑA, J.


SMITH, J.

16.